ADELL v SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, PC

Docket No. 98937. Submitted May 17, 1988, at Detroit. Decided July 19, 1988.

Robert Adell entered into a limited partnership known as the Troy Hilton Motor Inn Company in January, 1972. Fred Gordon, a member of the law firm of Bizer, Sommers and Gordon, P.C., acted as general partner and attorney for the partnership. Adell invested in the limited partnership in anticipation of tax advantages, and Gordon's responsibility was to ensure that the partners receive the appropriate tax benefits due them in accordance with the Internal Revenue Code. In 1973, the firm of Bizer, Sommers and Gordon, P.C., merged with and became part of the firm of Sommers, Schwartz, Silver and Schwartz, P.C. On March 11, 1974, Gordon informed all the limited partners by letter that the Internal Revenue Service was attacking the partnership's tax structure. Gordon also informed the limited partners that he intended to oppose the position taken by the ɪʀs and outlined the lengthy process involved. In April, 1975, the ɪʀs contacted the limited partners individually and served notices of deficiency. Adell was given the option of settling the case and receiving an allowance for thirty-five percent of the partnership losses or pursuing the claim to final disposition through the ɪʀs appeal process. Adell retained individual counsel and pursued the matter on his own. He eventually settled and paid the ɪʀs $582,734 on June 25, 1985. In 1986, he also paid $39,742 in state income taxes on the same matter. Adell filed suit against Sommers, Schwartz, Silver & Schwartz, P.C. and Fred Gordon in Oakland Circuit Court on October 2, 1985, alleging several claims against defendants. On February 3, 1987, the court, Alice L. Gilbert, J., held that all

Rᴇꜰᴇʀᴇɴᴄᴇs

Am Jur 2d, Attorneys at Law §§ 118 *et seq.*, 217 *et seq.*

Am Jur 2d, Partnership §§ 1390, 1395-1401.

Am Jur 2d, Summary Judgment §§ 13-15, 26 *et seq.*, 37 *et seq.*

What statute of limitations governs damage action against attorney for malpractice. 2 ALR4th 284.

Right of limited partner to maintain derivative action on behalf of partnership. 26 ALR4th 264.

plaintiff's claims should be stricken except the claim for legal malpractice, that an attorney-client relationship existed between plaintiff and both defendants, that the mutual release between plaintiff and Gordon from a collateral case specifically excluded the instant action, and that plaintiff's claim for legal malpractice accrued in 1975 when the IRS notified plaintiff of the tax deficiency. The court subsequently granted defendants' motion for summary disposition based on the expiration of the period of limitation, denied Gordon's motion for summary disposition on the basis of the mutual release, and denied the law firm's motion for summary disposition in which the firm argued that there was no attorney-client relationship between itself and plaintiff. Plaintiff appealed and defendants cross-appealed.

The Court of Appeals *held:*

1. The trial court correctly determined that the mutual release did not prohibit plaintiff from maintaining the instant action against defendant Gordon.

2. The trial court did not err in denying defendant law firm's motion to dismiss for failure to state a claim upon which relief can be granted nor in finding the existence of an attorney-client relationship between plaintiff and the law firm.

3. The trial court did not err in granting summary disposition in favor of defendants on the basis that the period of limitation applicable to plaintiff's malpractice claim had expired.

Affirmed.

1. RELEASE — SUMMARY DISPOSITION — SCOPE OF RELEASE.

    Summary disposition of a plaintiff's complaint is proper where there exists a valid release of liability between the parties; a release of liability is valid if it is fairly and knowingly made, and the scope of the release is governed by the intent of the parties as it is expressed in the release (MCR 2.116[C][7]).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — FAILURE TO STATE CLAIM.

    A motion for summary disposition for failure to state a claim upon which relief can be granted is tested by the pleadings alone; only the legal basis of the complaint is examined, and the factual allegations of the complaint are accepted as true, along with any inferences which may fairly be drawn therefrom; unless a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery, the motion should be denied (MCR 2.116[C][8]).

3. Partnership — Limited Partners — Derivative Actions — Individual Claims.

A limited partner is authorized to commence a derivative action on behalf of the partnership if the general partners refuse; a limited partner is also free to pursue his own individual claims (MCL 449.2001; MSA 20.2001).

4. Motions and Orders — Summary Disposition — Issues of Material Fact.

A motion for summary disposition alleging that there is no genuine issue of material fact is designed to test the factual support for a claim or defense; the court must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim or position asserted cannot be supported by the evidence at trial because of some deficiency which cannot be overcome; the court must give the benefit of every reasonable doubt to the party opposing the motion and inferences are to be drawn in favor of that party (MCR 2.116[C][10]).

5. Attorney and Client — Legal Malpractice — Burden of Proof.

A plaintiff in an action for legal malpractice has the burden of proving (1) the existence of the attorney-client relationship, (2) the acts which are alleged to have constituted the negligence, (3) that the negligence was the proximate cause of the injury, and (4) the fact and extent of the injury alleged.

6. Partnership — Limited Partners — Standing — Legal Malpractice.

A limited partner has standing to bring an individual claim of malpractice against an attorney in connection with his representation of the partnership.

7. Limitation of Actions — Legal Malpractice.

Actions for legal malpractice must be brought within two years of the date the attorney discontinues service to the plaintiff or within six months after plaintiff discovers or should have discovered the existence of the claim (MCL 600.5805[4], 600.5838[1] and [2]; MSA 27A.5805[4], 27A.5838[1] and [2]).

8. Limitation of Actions — Legal Malpractice — Tolling.

A legal malpractice cause of action accrues on the date the alleged malpractice occurs where the alleged malpractice is an act of commission, and the period of limitation is tolled until six months after damages are ascertainable; if the alleged malpractice is an act of omission, the cause of action does not accrue until the omission has resulted in some injury.

*Lawrence J. Stockler & Associates, P.C.* (by *Lawrence J. Stockler*), for plaintiff.

*Plunkett & Cooney, P.C.* (by *Patrick M. Barrett* and *Christine D. Oldani*), and *Brian E. Einhorn,* of Counsel, for Sommers, Schwartz, Silver & Schwartz, P.C.

*Rubenstein, Isaacs, Lax & Bordman, P.C.* (by *Kevin T. Keena*), for Fred Gordon.

Before: HOOD, P.J., and CYNAR and R. B. BURNS,* JJ.

CYNAR, J. Plaintiff, Robert Adell, appeals as of right from an order granting summary disposition in favor of defendants on the basis of the statute of limitations. Defendant Sommers, Schwartz, Silver and Schwartz, P.C., a law firm, cross-appeals from the same order which denied its motion for summary disposition based upon the fact that the law firm was not an attorney for plaintiff. The order also denied defendant Gordon's motion for summary disposition on the basis of a mutual release agreement between plaintiff and Gordon. We affirm the trial court's decision in all respects.

The facts are not in material dispute. In January, 1972, plaintiff entered into a limited partnership known as the Troy Hilton Motor Inn Company. Defendant Gordon acted as general partner and attorney for the partnership. At that time, Gordon was a member of the law firm of Bizer, Sommers and Gordon, P.C., which merged with and became part of defendant law firm in 1973. Plaintiff invested in the limited partnership in anticipation of tax advantages. It was Gordon's responsibility to ensure that the partners received

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

the appropriate tax benefits due them in accordance with the Internal Revenue Code.

In a letter dated March 11, 1974, Gordon informed all the limited partners that the Internal Revenue Service was attacking the partnership's tax structure. The partnership had formed a corporation for the exclusive purpose of obtaining mortgage financing in avoidance of the usury statutes. The IRS maintained that this "dummy" corporation was entitled to claim the tax losses rather than the partnership itself. Gordon apprised the limited partners of his intentions to oppose the position of the IRS and outlined the lengthy process by which the matter would be litigated.

In April, 1975, the limited partners were contacted individually by the IRS and given notices of deficiency. Plaintiff was afforded an option to either settle for an allowance for thirty-five percent of the partnership losses or pursue the claim to final disposition through the IRS appeal process. At that time, plaintiff retained individual counsel and pursued the matter on his own. Plaintiff eventually settled and paid the IRS $582,734 on June 25, 1985. Plaintiff also paid $39,742 in state income taxes on the same matter in 1986.

Plaintiff filed the instant complaint on October 2, 1985, alleging several claims against defendants. On February 3, 1987, the trial court issued its opinion and held: (1) the various claims of plaintiff should be stricken except the claim for legal malpractice; (2) an attorney-client relationship existed between plaintiff and both defendants; (3) the mutual release between plaintiff and Gordon from a collateral case specifically excluded the instant action; and (4) plaintiff's claim for legal malpractice accrued in 1975 when the IRS notified plaintiff of the tax deficiency. On February 24, 1987, the trial court issued an order in which defendants'

motion for summary disposition based on the expiration of the period of limitation was granted. The order denied Gordon's motion for summary disposition on the basis of the mutual release and denied the law firm's summary disposition motion on the basis that there was no attorney-client relationship between the law firm and plaintiff. The instant appeal and cross-appeals followed.

For purposes of clarity, we will initially address the issues raised by cross-appellants. Cross-appellant Gordon alleges that the mutual release entered into between himself and plaintiff in a collateral action barred any future litigation by either party against the other on facts then in existence. The motion by Gordon was brought pursuant to MCR 2.116(C)(7).

Summary disposition of a plaintiff's complaint is proper where there exists a valid release of liability between the parties. MCR 2.116(C)(7). A release of liability is valid if it is fairly and knowingly made. *Denton v Utley,* 350 Mich 332, 342; 86 NW2d 537 (1957); *Brooks v Holmes,* 163 Mich App 143, 145; 413 NW2d 688 (1987). The scope of a release is governed by the intent of the parties as it is expressed in the release. *Jaffa v Shacket,* 114 Mich App 626, 637; 319 NW2d 604 (1982).

On December 27, 1978, a mutual release agreement between plaintiff and defendant Gordon was incorporated into a consent judgment entered in Oakland Circuit Court in a collateral case. Defendant Gordon alleges that the mutual release bars plaintiff's claims against him. We disagree.

While the release bars certain claims, an exception clause in the release provides:

> [E]xcept this release shall not and does not release Fred Gordon from any claim which may be made against him by any or all of the Class A

limited partners in connection with the original formation of the limited partnership, or representations made in the sale of its interest to the respective Class A limited partners.

As stated in the exception, the limited partners are not barred from bringing an action against defendant Gordon pertaining to the formation of the partnership. Gordon indicated in his March 11, 1974, letter that the IRS was challenging the "structure" of the partnership. The IRS challenge produced injury from which plaintiff complains. Problems in the structure of the partnership are related to the formation of the partnership. Thus, plaintiff is not precluded from maintaining an action against defendant Gordon due to the mutual release. Further, § 5.6 of the partnership agreement states that it is a purpose of the partnership to allow the limited partners to share the tax advantages of the business. A claim that Gordon's alleged negligence thwarted a purpose of the partnership would also fall within the release exception since it relates to claims arising from the original formation of the partnership. Therefore, the trial court correctly determined that the mutual release did not prohibit plaintiff from maintaining the instant action against defendant Gordon.

Cross-appellant law firm alleges that there was no attorney-client relationship between plaintiff and the law firm and, thus, plaintiff has failed to allege a prima facie case of professional negligence in the form of malpractice. The law firm claims that all legal representation for the partnership was by defendant Gordon individually. Further, the law firm argues that plaintiff, as an individual partner, has no standing to sue.

The law firm's motion for summary disposition

was brought under MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted), and (10) (no genuine issue of material fact). Initially, the law firm contends that it was entitled to summary disposition under MCR 2.116(C)(8) because a limited partner is not entitled to individually sue for the wrongs committed on the partnership. We do not agree.

A motion for summary disposition for failure to state a claim upon which relief can be granted is tested by the pleadings alone. *Mills v White Castle System, Inc,* 167 Mich App 202, 205; 421 NW2d 631 (1988). Only the legal basis of the complaint is examined. *Id.* The factual allegations of the complaint are accepted as true, along with any inferences which may fairly be drawn therefrom. Unless a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery, the motion should be denied. *Id.*

A limited partner is authorized to commence a derivative action on behalf of the partnership if the general partners refuse. MCL 449.2001; MSA 20.2001. Limited partners are also free to pursue their own individual claims. See *Jaffe v Harris,* 126 Mich App 813, 818; 338 NW2d 228 (1983), modified on other grounds 419 Mich 942 (1984), and *Jaffe v Harris,* 109 Mich App 786, 795; 312 NW2d 381 (1981). Both *Jaffe* decisions were premised on the notion that a limited partner may bring individual claims and expanded that notion to hold that a limited partner may bring a derivative action for wrongs committed against the partnership.

In the instant case, plaintiff could bring an individual action for damages resulting from any malpractice committed by defendants. Thus, the trial court did not err in denying defendant law

firm's motion to dismiss for failure to state a claim upon which relief can be granted.

We also hold that the trial court did not err in finding the existence of an attorney-client relationship between plaintiff and defendant law firm. The law firm contends that it was entitled to summary disposition under MCR 2.116(C)(10).

A motion based on MCR 2.116(C)(10) is designed to test the factual support for a claim or defense. The court must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim or position asserted cannot be supported by the evidence at trial because of some deficiency which cannot be overcome. The court must give the benefit of every reasonable doubt to the party opposing the motion, and inferences are to be drawn in favor of that party. *Lloyd v Avadenka,* 158 Mich App 623, 626; 405 NW2d 141 (1987).

In an action for legal malpractice, the plaintiff has the burden of proving: (1) the existence of the attorney-client relationship; (2) the acts which are alleged to have constituted the negligence; (3) that the negligence was the proximate cause of the injury; and (4) the fact and extent of the injury alleged. *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 690; 310 NW2d 26 (1981), lv den 413 Mich 913 (1982); *Beattie v Firnschild,* 152 Mich App 785, 790; 394 NW2d 107 (1986).

The law firm alleges that plaintiff is unable to establish the existence of an attorney-client relationship because at no time did the law firm act on plaintiff's personal behalf and it was hired by defendant Gordon, as general partner, to perform legal services solely on behalf of the limited partnership. In support, the law firm cites *Quintel Corp v Citibank, NA,* 589 F Supp 1235, 1241-1242 (SD NY, 1984), for the following proposition:

> To hold that a limited partner is automatically a foreseeable client of the attorney representing the general partners or even the limited partnership, in the absence of any affirmative assumption of duty by the attorney, would ignore Ethical Consideration 5-18 which specifically defines the attorney's allegiance to the entity that retained him rather than to any person connected with the entity.

The law firm, therefore, contends that plaintiff, as a limited partner, has no standing to bring an action against the partnership's legal counsel and that the law firm represented the limited partnership as an entity rather than the individual partners. Where an attorney represents a corporation, no attorney-client relationship exists between the attorney and the shareholder so as to support a shareholder action for legal malpractice. *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC,* 107 Mich App 509, 514; 309 NW2d 645 (1981). A partnership is recognized as a separate entity for purposes of litigation. *Wayne-Oakland Bank v Adam's Rib,* 48 Mich App 144; 210 NW2d 121 (1973), lv den 390 Mich 796 (1973). In Michigan, individual limited partners may sue accountants for malpractice committed upon the partnership. *Jaffe, supra.* Thus, it necessarily follows that a limited partner has standing to bring an individual claim of malpractice against an attorney in connection with his representation of the partnership. In this case, the trial court did not err in finding the existence of an attorney-client relationship between plaintiff and the law firm. As noted previously, both *Jaffe* decisions have permitted individual limited partners to sue accountants for malpractice. We see no sound reason to distinguish suits for attorney malpractice in the representation of a limited partnership from those concern-

ing an accountant's malpractice. Therefore, plaintiff has established the existence of an attorney-client relationship between himself and the law firm.

Finally, plaintiff alleges that the trial court erred in granting defendants summary disposition on the basis that the period of limitation had expired. Plaintiff argues that his malpractice claim did not accrue in April, 1975, when the IRS issued its notice of tax deficiency, but that, the claim accrued in June, 1985, when plaintiff settled and paid the IRS. Thus, he claims that his complaint is timely. Defendants argue that plaintiff discovered or should have discovered their alleged malpractice upon receipt of the notice of tax deficiency in 1975. We agree with defendants.

Actions for legal malpractice must be brought within two years of the date the attorney discontinues service to the plaintiff or within six months after the plaintiff discovers or should have discovered the existence of the claim. MCL 600.5805(4); MSA 27A.5805(4); MCL 600.5838(1) and (2); MSA 27A.5838(1) and (2); *Gambino v Cardamone,* 163 Mich App 574, 578; 414 NW2d 896 (1987). Plaintiff claims that his cause of action did not accrue until June, 1985, when the IRS notified him of his tax liability. In support, plaintiff refers to *Luick v Rademacher,* 129 Mich App 803; 342 NW2d 617 (1983), and *Dowker v Peacock,* 152 Mich App 669; 394 NW2d 65 (1986). The *Luick* and *Dowker* decisions seem to suggest that a legal malpractice claim "accrues" only when all of the necessary elements of a cause of action, including damages, have been discovered. In *Gambino, supra,* this Court closely examined *Luick* and *Dowker* and concluded that the central issue in both cases was not accrual, but a tolling of the period of limitation by the inability of the plaintiff to discover the

existence of the malpractice claim. In addition, the *Gambino* Court stated that, if the alleged malpractice is an act of commission, the cause of action accrues on the date the alleged malpractice occurs and the period of limitation is tolled until six months after damages are ascertainable. If the alleged malpractice is an act of omission, the cause of action does not accrue until the omission has resulted in some injury. *Gambino, supra,* pp 579-580.

In *Luick, supra,* the plaintiff employed the defendant-attorney in 1979 in a divorce action. In July, 1979, the attorney placed on the record a settlement agreement to which the plaintiff had not consented. In October, 1979, the plaintiff discharged the defendant and appealed the settlement. In January, 1982, Luick sued the attorney after exhausting the appeals process. This Court held the plaintiff's suit was barred because he suffered identifiable and appreciable harm in July, 1979, when the defendant placed the settlement on the record. Therefore, the suit was barred by the expiration of the limitation period, more than two years having passed since the date of last service (October, 1979) and more than six months having passed since the date the plaintiff should have discovered his injury (July, 1979). *Id.,* pp 808-809.

In *Dowker,* the plaintiff-builder had hired the defendant law firm in February, 1980, in order to file a claim and lien against a third party for construction work performed. The lien, which was defective, was withdrawn in April, 1980, but the lawsuit continued. The plaintiff discharged the firm in March, 1982, because of its lack of progress on the case. The plaintiff hired another attorney and proceeded to trial in June, 1984. The third party filed for bankruptcy and the plaintiff was

listed as an unsecured creditor. The plaintiff filed his claim for malpractice on August 9, 1984.

The *Dowker* Court held that the plaintiff's complaint was timely. Even though the plaintiff knew in April, 1980, that the defendant had not filed the lien properly, the plaintiff had no identifiable injury until he was listed as an unsecured creditor in the bankruptcy proceedings. Until that time, the defectively filed lien had not caused the plaintiff any harm since he was still pursuing his suit against the third party. *Id.,* pp 674-675.

In *Gambino,* the plaintiffs were advised by the defendant in February, 1980, that a $75,000 recovery from settlement of a breach of contract claim was nontaxable on their 1983 tax return. In January, 1983, the irs contacted Gambino regarding the return and in June, 1983, the irs assessed additional taxes and penalties. This Court held that the alleged malpractice was an act of commission and accrued in February, 1980. However, the action was tolled until June, 1983, when the irs assessed additional taxes and penalties. 163 Mich App 580. Ultimately, the *Gambino* Court found that the plaintiffs' complaint, filed nine months after they discovered or should have discovered the existence of the claim, was untimely. *Id.*

In our case, plaintiff's complaint alleges an act of commission: the improper formation of the limited partnership resulting in adverse tax consequences. Plaintiff's claim accrued in 1972 when the partnership was improperly formed. However, the period of limitation was tolled until six months after plaintiff discovered or should have discovered his damages. We hold that plaintiff should have discovered his damages in April, 1975, when he was notified by the irs of the tax deficiency. The maximum amount of damages was the amount of

the deficiency. Plaintiff had an identifiable loss in 1975 even though the actual extent of the loss was not known until 1985. Therefore, summary disposition was properly granted.

Affirmed.