SQUIRE v GENERAL MOTORS CORPORATION

Docket No. 99180. Submitted March 17, 1988, at Lansing. Decided February 21, 1989.

Robert Squire, a salaried employee of General Motors Corporation, was laid off from his employment on December 31, 1981. Economic conditions had forced General Motors to reduce its salaried work force. Squire and one other employee in his department were laid off as a result of having lower work evaluations than the other persons in the department. Squire brought an action in Wayne Circuit Court against General Motors Corporation, alleging age discrimination, breach of contract and negligent evaluation. Defendant moved for summary disposition. The trial court, Robert J. Colombo, Jr., J., granted defendant's motion. Plaintiff appealed.

The Court of Appeals *held:*

1. Plaintiff failed to plead facts sufficient to sustain his claim of disparate treatment on the basis of age.

2. Because the evaluation process which was the determining factor in establishing who would be laid off was subjective in nature, a disparate impact analysis is not applicable.

3. Plaintiff failed to establish any breach of any contractual obligation.

4. The tort claim for negligent evaluation is nothing more than a restatement in tort form of the substance of the breach of contract count.

Affirmed.

1. MASTER AND SERVANT — AGE DISCRIMINATION — PRIMA FACIE CASE.

A plaintiff in an action alleging disparate treatment on the basis of age in the determination of which employees shall be laid off because of economic necessity must present sufficient evidence that age was a determining factor in the decision to terminate him rather than some other employee; however, a plaintiff does

REFERENCES

Am Jur 2d, Job Discrimination §§ 98 *et seq.*, 887 *et seq.*

Application of state law to age discrimination in employment. 96 ALR3d 195.

not need to prove that age was the sole factor in the decision to terminate him, rather he need only show that age was a factor in that decision.

2. CIVIL RIGHTS — EMPLOYMENT — DISPARATE IMPACT — SUBJECTIVE EVALUATIONS.

A claim alleging a violation of an individual's civil rights by virtue of the disparate impact of some employment policy requires a showing that a facially neutral employment practice burdens a protected class of persons more harshly than persons who are not members of the protected class; an employment evaluation based upon a subjective evaluation is not properly the subject of a disparate impact claim in that a subjective evaluation is patently not a facially neutral employment practice.

*Ronald Reosti* and *Mark Granzotto,* for plaintiff.

*Bodman, Longley & Dahling* (by *Theodore Souris, James J. Walsh* and *Kim Michael Lavalle*), and *Mark R. Flora,* of Counsel, for defendant.

Before: MICHAEL J. KELLY, P.J., and GRIBBS and C. W. SIMON, JR.,* JJ.

C. W. SIMON, JR., J. Effective December 31, 1981, plaintiff, Robert Squire, was laid off from his employment at defendant, General Motors Corporation. Plaintiff subsequently brought suit against defendant, alleging age discrimination, breach of contract, and negligent evaluation. After a January 30, 1987, hearing, the lower court granted defendant's motion for summary disposition as to all claims. MCR 2.116(C)(8) and (10). Plaintiff appealed to this Court. We affirm.

In an April, 1981, letter, defendant announced a new policy regarding the reduction of GM's salaried work force. No longer would employees be laid off in order of the least total length of service at GM. Instead, layoffs were to be based on work

---

* Circuit judge, sitting on the Court of Appeals by assignment.

performance evaluations, with those employees with the lowest appraisals being laid off first.

In late 1981, defendant was forced by economic conditions to lay off four salaried employees in plaintiff's department. Two employees accepted early retirement, while plaintiff and another employee were laid off on the basis of low work evaluations. Plaintiff's evaluation, which had been conducted in February of 1981, ranked plaintiff at the second lowest level of "needs slight improvement." The other employee laid off was the only other employee in plaintiff's department to receive that same ranking, and no other employee had been ranked lower.

In his complaint, plaintiff first alleged age discrimination on the grounds that the new layoff policy (1) provided plaintiff's supervisors with a pretext to intentionally terminate plaintiff's employment because of his age, and (2) had a disparate impact on older employees. Under these separate theories of disparate treatment and disparate impact, plaintiff claimed that defendant's employment practices constituted age discrimination contrary to Michigan's civil rights legislation, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* See MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).

The trial court granted summary disposition on plaintiff's claim of disparate treatment pursuant to MCR 2.116(C)(10). In order to grant a motion based on no genuine issue of material fact, the lower court must be satisfied that the claim asserted cannot be supported by the evidence at trial because of some deficiency which cannot be overcome. *Adell v Sommers, Schwartz, Silver & Schwartz, PC,* 170 Mich App 196, 204; 428 NW2d 26 (1988).

In the instant case, the layoffs were caused by economic necessity. Therefore, in order for plaintiff

to establish a prima facie case of disparate treatment, plaintiff must present sufficient evidence that age was a determining factor in the decision to terminate the older employee. *Matras v Amoco Oil Co,* 424 Mich 675, 684; 385 NW2d 586 (1986). Plaintiff does not need to prove that age was the sole factor in the decision, just that it was a factor that made a difference. *Id.,* p 682. For the purposes of a summary disposition motion, plaintiff is only required to establish that a genuine issue of material fact as to a prima facie case exists. *Meeka v D & F Corp,* 158 Mich App 688, 694; 405 NW2d 125 (1987).

Plaintiff relies on the following evidence to establish that a genuine issue of material fact existed as to his claim of disparate treatment. A review of this evidence leads us to the conclusion that the trial court did not err when it granted summary disposition.

Plaintiff points out that only he, age forty-eight, and another employee, age sixty-two, received evaluations which led to their eventual layoffs. However, without proof as to the ages of the approximately forty-eight other employees in plaintiff's department, this evidence lacks probative value. Secondly, the fact that plaintiff was downgraded to the rating of "needs slight improvement" after twenty-three years of being ranked in the middle level of "good competent performance" does not, by itself, prove that age discrimination played a part in the low evaluation. *Matras, supra,* pp 685-686. Thirdly, plaintiff's evaluation was conducted in February of 1981, approximately three months before the new layoff policy was announced.

Finally, plaintiff relies on a statistical study prepared by one of plaintiff's experts. This study examined the statistical relationship between age

and performance evaluations given to the salaried employees at GM's Pontiac division in the early 1980's. The report concluded that age played a statistically significant part in the performance evaluations. We find that, while statistical evidence may be used to establish a prima facie case of age discrimination, see *Dixon v W W Grainger, Inc,* 168 Mich App 107, 118; 423 NW2d 580 (1987), the statistical report presented by plaintiff was not sufficient to create a genuine issue of material fact. The disparities found in the report were both insignificant and inconclusive. Therefore, the trial court properly granted summary disposition in favor of defendant.

We next evaluate plaintiff's claim of disparate impact, upon which the trial court granted summary disposition pursuant to MCR 2.116(C)(8). In a motion for summary disposition for failure to state a claim upon which relief can be granted, only the legal basis of the complaint is examined. *Adell,* 170 Mich App 203.

The disparate impact theory, as well as the disparate treatment theory, evolved from Title VII of the federal civil rights act, 42 USC 2000e *et seq.,* which prohibits not only intentional discrimination, but also practices which are fair in form, but discriminatory in operation. See 42 USC 2000e-2; *Griggs v Duke Power Co,* 401 US 424, 430-431; 91 S Ct 849; 28 L Ed 2d 158 (1971). The doctrine of disparate impact has been incorporated into the Michigan Civil Rights Act. *Farmington Ed Ass'n v Farmington School Dist,* 133 Mich App 566, 573; 351 NW2d 242 (1984). This theory requires a showing that a facially neutral employment practice burdens a protected class of persons more harshly than others. See *Smith v Consolidated Rail Corp,* 168 Mich App 773, 776; 425

NW2d 220 (1988); *Farmington Ed Ass'n, supra,* p 572.

The trial court granted summary disposition on the ground that the theory of disparate impact cannot be based on a subjective employment practice such as the work evaluations involved in the instant case. Although no Michigan case ever discussed this issue, it has been raised frequently in the federal circuit courts, with conflicting results.[1] In determining the substantive law in discrimination cases, it is appropriate to consider federal precedent. *Dixon,* 168 Mich App 113.

We agree with those cases which limit the application of the disparate impact theory to objective employment practices. In *Griggs,* the United States Supreme Court sought to invalidate facially neutral employment practices that were unrelated to measuring job capability and which operated in a discriminatory manner. See *Griggs,* 401 US 431-432. Subjective practices are patently outside the class of facially neutral mechanisms and are not the type of practices outlawed under *Griggs.* See *Harris v Ford Motor Co,* 651 F2d 609, 611 (CA 8, 1981).

Furthermore, it would be unworkable to challenge a subjective practice under the theory of disparate impact. Subjective tests necessarily rely on criteria which cannot be precisely measured. A plaintiff would be forced to show that the subjective practice was used in a discriminatory manner against plaintiff. This result contravenes the established policy that proof of discriminatory intent is not necessary in a disparate impact analysis. *Farmington Ed Ass'n,* 133 Mich App 571. We hold that a subjective employment practice does not lend itself to a disparate impact analysis.

---

[1] See *Griffin v Bd of Regents of Regency Universities,* 795 F2d 1281, 1288, n 14 (CA 7, 1986).

We are sympathetic to the argument that such a limitation may "encourage employers to use subjective evaluation criteria rather than validated objective tests" in an apparent attempt to circumvent the age discrimination laws. See *Regner v City of Chicago,* 789 F2d 534, 539 (CA 7, 1986). However, we believe that subjective practices are better dealt with under the theory of intentional discrimination. As stated in *Harris, supra,* subjective evaluation systems may be probative of intentional discrimination, especially when discriminatory patterns result, because such systems operate to conceal actual bias in decisionmaking.

Since plaintiff's disparate impact claim is based upon the operation of subjective employment criteria, it was unenforceable as a matter of law, and summary disposition was proper. MCR 2.116(C)(8).

In his second cause of action for breach of contract, plaintiff argues that defendant violated two contractual promises when it laid off plaintiff under the new policy, using as the basis for the layoff the February, 1981, evaluation.[2] Plaintiff does not rely on any written employment contract, but states rather that certain contractual promises concerning the layoff procedure were created by defendant in its policy statements and handbooks. See *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980). In *Toussaint,* the seminal case in Michigan on wrongful discharge, our Supreme Court ruled that the oral and written statements of an employer could create contrac-

---

[2] As a point of clarification, we note that the fact that plaintiff's layoff was due to economic necessity does not preclude review of plaintiff's argument. Plaintiff is not contesting the reason for his layoff, but rather the manner in which defendant decided which employees to lay off. Therefore, the concern expressed in *Bhogaonker v Metropolitan Hospital,* 164 Mich App 563, 565; 417 NW2d 501 (1987), lv den 429 Mich 898 (1988), does not apply.

tual rights for an employee. Under *Toussaint,* if defendant's statements in the present case created an obligation to plaintiff to follow a certain layoff procedure, defendant could not fire plaintiff at will. See *Loftis v G T Products,* 167 Mich App 787, 791; 423 NW2d 358 (1988).

It is not necessary for us to determine whether defendant's statements rose to the level of contractual promises since we hold that, in any event, defendant complied with its obligations. The evidence clearly established that defendant's appraisal of plaintiff's work performance was fair, accurate, and up-to-date. Nor did defendant breach an alleged contractual promise to lay off employees in order of the least total length of service. Defendant had always retained the right to alter any of its policies, and, in fact, altered its policy prior to the time that plaintiff was laid off.

Plaintiff argues that the new layoff policy was not effective as to him because he was never informed of the change. However, defendant clearly announced the new policy in its April, 1981, letter, which was addressed to all salaried employees. In addition, defendant circulated several additional documents designed to implement the new layoff procedures. Even if plaintiff never personally was informed of the change, defendant publicized the new policy approximately eight months prior to plaintiff's layoff. The grant of summary disposition as to plaintiff's breach of contract claim was proper pursuant to MCR 2.116(C)(10).

In his final cause of action, plaintiff claims that defendant negligently performed the evaluation of plaintiff's job performance. Since this tort claim arose from the same breach of duty upon which plaintiff's contract claim was based, it was not a valid independent tort action. See *Loftis,* 167 Mich

App 796. This Court cannot enforce the tort claim without enforcing defendant's alleged contractual duty to evaluate employees in a fair, accurate, and timely manner. Therefore, plaintiff's third cause of action was unenforceable as a matter of law and summary disposition was proper pursuant to MCR 2.116(C)(8).

The lower court's grant of summary disposition as to all of plaintiff's claims is affirmed.