FERRETT v GENERAL MOTORS CORPORATION

Docket No. 88489. Argued May 8, 1991 (Calendar No. 3). Decided
    August 27, 1991.

Darwin Ferrett brought an action in the Wayne Circuit Court,
    against General Motors Corporation, alleging breach of con-
    tract and negligent evaluation after his employment with GM
    was terminated because of excessive absenteeism. The plaintiff
    contended that GM failed to undertake a third evaluation of his
    job performance following his failure to maintain an acceptable
    attendance record after completion of a second ninety-day
    Performance Improvement Plan. The court, John H. Hausner,
    J., granted summary disposition for the defendant, holding,
    with respect to the breach-of-contract claim, that there was no
    genuine issue of material fact concerning the plaintiff's status
    as an employee at will, and, with respect to the negligent-
    evaluation claim, that it was not based on a legal duty indepen-
    dent of the employment relationship. The Court of Appeals,
    DOCTOROFF, P.J., and SHEPHERD and McDONALD, JJ., affirmed in
    a memorandum opinion (Docket No. 115103). The plaintiff
    appeals, limited to the issue whether the trial court erred in
    granting summary disposition for the defendant.

In a unanimous opinion by Justice LEVIN, the Supreme Court
    held:

The trial court did not err in dismissing the plaintiff's claim
    of negligent evaluation. There is no right arising at common
    law as a matter of public policy, separate and distinct from any
    contractual right, to be evaluated or correctly evaluated before
    being discharged from employment.

1. Any action arising out of a dismissal from employment
    would not sound in tort for negligent evaluation, but could be
    maintained, if at all, only for breach of a contractual obligation
    to evaluate. Absent an employer's agreement to provide job
    security or to discharge only for cause, the employment rela-
    tionship is at the will of both parties.

2. In this case, the plaintiff essentially was an employee at
    will; therefore, he did not have a contractual right to be
    evaluated or correctly evaluated before the employer exercised
    its right to discharge him at will. Because there is no separate
    and distinct duty imposed by law on an employer to evaluate or

correctly evaluate employees, the plaintiff cannot maintain an action in tort against the employer for failure to evaluate him before exercising its right to discharge him at will without regard to whether there was cause to terminate his employment.

Affirmed.

*William W. Webb* for the plaintiff.

*Stuart R. Cohen,* General Counsel, and *Richard M. Tuyn,* Co-Counsel, for the defendant.

Amici Curiae:

*Mark Granzotto, Monica Farris Linkner,* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

*Bodman, Longley & Dahling* (by *Lloyd C. Fell* and *Kathleen A. Lieder*); (*William H. Crabtree* and *V. Mark Slywynsky,* of counsel) for Motor Vehicle Manufacturers Association of the United States, Inc.

LEVIN, J. This Court granted leave to appeal, limited to the issue whether the circuit court erred in granting General Motors Corporation summary disposition dismissing Darwin Ferrett's claim of negligent evaluation.[1] We agree with the Court of Appeals that the circuit court did not err in dismissing Ferrett's claim of negligent evaluation.

I

Ferrett was a test driver for General Motors Corporation at its proving grounds in Milford from November, 1973, until the termination of his employment in August, 1986. Although otherwise a good employee, Ferrett's thirteen years with GM

[1] 437 Mich 851 (1990).

included problems with absenteeism. From early 1983 until the termination of his employment in August, 1986, he was made aware that unless he maintained consistently good attendance, his position with GM would be in jeopardy.

As a salaried worker for GM, Ferrett's employment relationship was the subject of a handbook entitled "Working with General Motors." The handbook advised workers that their performance would be assessed at least twice annually by their supervisor, and that the assessment program consisted of four main parts: performance planning, informal discussions, written appraisal, and appraisal interview. Performance Improvement Plans, though not specifically discussed in the handbook, were a part of the appraisal and evaluation program.

The employee handbook also contained the following statements, the first, under the heading "Employment Status":

> As a regular employe, your employment is on a calendar month-to-month basis.
>
> *   *   *
>
> [T]he policies and procedures in the booklet do not constitute a legal contract, and do not modify the month-to-month employment relationship . . . .

Beginning in 1983, Ferrett received a number of oral and written warnings from his supervisor that his deteriorating attendance was becoming a significant problem for management. By January, 1984, Ferrett's attendance problems caused his overall performance rating to drop from "[g]ood [c]ompetent" to "[n]eeds [s]light [i]mprovement because of excessive absenteeism . . . ."

Ferrett was placed on a Performance Improvement Plan for ninety days, during which time he

maintained an acceptable attendance record. After the Performance Improvement Plan was successfully completed, however, Ferrett's attendance slackened. In 1985, a memorandum was placed in Ferrett's file documenting the recurring attendance problems.

In 1986, Ferrett was placed on a second ninety-day Performance Improvement Plan that specified strict performance standards and stated that if Ferrett did not reach an acceptable attendance level by the end of the ninety days, his performance rating would be reappraised and management would recommend termination of his employment.

During this ninety-day period, Ferrett's performance again improved. At the end of the ninety days, Ferrett's supervisor noted that Ferrett had successfully completed the Performance Improvement Plan, and he was reëvaluated to "[g]ood [c]ompetent." The supervisor also noted that he had advised Ferrett that "his performance improvement must be sustained in the future or management will recommend termination." In an appraisal five days later, the supervisor noted that he had told Ferrett "it is very important that he maintain a good attendance record and schedule his time off in the future or management will [recommend] termination."

Between April 22, 1986, the date of the appraisal following the conclusion of the second Performance Improvement Plan, and August 21, 1986, Ferrett missed ten days' work. He submitted a note for the last of the ten absences, on August 20, 1986, explaining that his mother had been in an accident, and that he had gone to the hospital to visit her. According to a report to the file written by Ferrett's supervisor, the supervisor reminded Ferrett that under the terms of the last

Performance Improvement Plan, he was to maintain perfect attendance and notify the supervisor when he would not be at work, and Ferrett promised to do so. The supervisor did not, however, tell Ferrett that his employment was about to be terminated due to excessive absenteeism.

One week later, on August 29, 1986, Ferrett was discharged from further employment with GM.

## II

Ferrett commenced this action alleging breach of contract and negligent evaluation. The circuit court granted GM's motion for summary disposition on both the contract and the negligent-evaluation counts. On the breach-of-contract count, the court held that there was no genuine issue of material fact concerning the "at will" status of Ferrett's employment. On the negligent-evaluation count, the court held that Ferrett's claim was not based on a legal duty independent of the employment relationship.

The Court of Appeals affirmed.

## III

The Court of Appeals, and the federal courts in the Sixth Circuit applying Michigan law, have, with two exceptions,[2] held that an employee may not maintain a tort action for negligent evalua-

---

[2] In *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981), the employee alleged that the defendant, whose practice was to periodically evaluate its employees, had negligently evaluated him.

The Court of Appeals held that, although the defendant was not under an independent duty to evaluate its employees, once it undertakes periodic evaluations it becomes obligated to conduct them fairly. The Court quoted the statement in *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956), to the effect that the law imposes an obligation on everyone who attempts to do anything, to do it fairly, so that negligent performance of a contract could give rise to a cause of action in tort.

tion. Those cases, relying on this Court's decision in *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956), generally reason that an employee may not maintain such an action because he does not seek to recover for breach of a duty separate and distinct from any breach of contract.

*Loftis v G T Products, Inc,* 167 Mich App 787, 796; 423 NW2d 358 (1988), typifies Court of Appeals cases holding that an employee may not maintain an action for negligent evaluation on the basis of an asserted breach of an employment contract. The employee claimed that his employer was required under the terms of the employee handbook to evaluate its employees and to use reasonable care in performing an evaluation.

The Court held that the employee could not maintain an action because his complaint "did not allege a breach of duty . . . distinct from the breach of contract, an essential element of a cause of action for negligent evaluation . . . ." The Court read this Court's holding in *Hart* to mean that "[a] tort action will lie if a relationship or situation of peril exists that would give rise to a legal duty without the need to enforce the contract promise itself."[3] *Id.* at 797.

---

The Court added a caveat, however, that if the employee were found to be employed under an employment-at-will contract, the defendant had the right to terminate his employment at any time, even arbitrarily and capriciously, and the employee could not then maintain an action for negligent evaluation.

In *Chamberlain v Bissell Inc,* 547 F Supp 1067, 1081 (WD Mich, 1982), the Court said that under Michigan law "a duty of ordinary care arises from the *performance* of a contractual obligation." While a complete failure to perform a contractual obligation would give rise only to a breach of contract, negligent performance of the obligation is also actionable in tort. The Court found that because the defendant had a contractual obligation to conduct performance reviews under an implied just-cause contract, and it actually performed those reviews, it had a duty to use ordinary or reasonable care in performing those reviews.

[3] The Court said:

Count II of [the employee's] complaint [for negligent evaluation] does not allege a breach of duty distinct from the alleged

A number of panels of the Court of Appeals[4] and of the United States Court of Appeals for the Sixth Circuit[5] have reached the same result.

> breach of the employment contract. Although [the employee] contends that defendant was contractually obligated according to the employee information handbook to properly evaluate his work performance, if those evaluations were indeed negligently compiled, then defendant would not have performed its obligation under the contract which would constitute a breach of the contract. If defendant then discharged [the employee] based upon the negligently compiled or inaccurate evaluations, then defendant would have breached its duty to discharge [the employee] only for good cause, which is a basis for a breach of contract action. [*Loftis v G T Products, supra,* pp 798-799.]

[4] *Mitchell v General Motors Acceptance Corp,* 176 Mich App 23; 439 NW2d 261 (1989) (no claim for negligent evaluation because the employee did not plead that GMAC breached any duty independent of the alleged breach of contract); *Squire v General Motors Corp,* 174 Mich App 780; 436 NW2d 739 (1989) (since the tort claim for negligent evaluation arose from the same breach of duty upon which the employee's contract claim was based, it was not a valid independent tort action); *Grant v Michigan Osteopathic Medical Center,* 172 Mich App 536; 432 NW2d 313 (1988) (the employee's purported negligence claim did not state a distinct and separate cause of action from her breach of contract claim); *Dahlman v Oakland Univ,* 172 Mich App 502; 432 NW2d 313 (1988) (the defendant would not have evaluated the employee if the employee did not have an employment contract; therefore, there was no breach of duty to evaluate separate and distinct from a breach of contract); *Sankar v Detroit Bd of Ed,* 160 Mich App 470; 409 NW2d 213 (1987) (the actions complained of and characterized as a tort of negligent evaluation arose exclusively from a duty created under the collective bargaining agreement); *Struble v Lacks Industries, Inc,* 157 Mich App 169; 403 NW2d 71 (1987) (the employee was merely asserting that the defendant negligently fired her by breaching contractual promises arising from the defendant's policies and procedures governing discipline; the facts were evidence in support of a breach of contract claim, but did not establish a separate cause of action in tort); *Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641; 378 NW2d 558 (1985) (because there was no breach of duty distinct from the breach of contract, the employee's cause of action for negligent discharge arose from a breach of promise or the nonfeasance of a contractual obligation and her action was in contract, not in tort).

[5] In *Haas v Montgomery Ward,* 812 F2d 1015 (CA 6, 1987), the court held that since the employee was evaluated only because of her position, she could not maintain an independent tort action for negligent evaluation causing her discharge. See also *Brock v Consoli-*

IV

We decline to recognize an action in tort for negligent evaluation. An action may be maintained, if at all, only for breach of a contractual obligation to evaluate.

In *Hart v Ludwig,* this Court held that the plaintiff could not maintain an action in tort for nonperformance of a contract. That was the holding. Everything else that was said was obiter dictum. The effort to extract from that obiter dictum a rationale for evolving a tort action for negligent evaluation is not persuasive.

A duty in tort may arise out of a relationship.[6] The asserted relationship here is a contract that was terminable at the will of either Ferrett or GM. Whether the contract was express or implied, even if it included implied obligations arising out of policies set forth in the employee handbook, the circuit court found that the employment contract did not give rise to enforceable obligations. The Court of Appeals affirmed. The correctness of that determination is not before us because this Court's order granting leave to appeal was limited to the question whether Ferrett's claim of negligent evaluation was correctly dismissed.

V

Ferrett complains essentially that GM failed to

dated *Biomedical Laboratories,* 817 F2d 24 (CA 6, 1987) (Michigan does not recognize a cause of action in tort for the negligent performance of a contract); *Speckine v Stanwick Int'l, Inc,* 503 F Supp 1055 (WD Mich, 1980) (Michigan law is clear in not recognizing a cause of action for tort in a contract setting unless there is a relationship that gives rise to the duty from some source other than the contract itself).

[6] Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. [*Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977).]

perform an asserted obligation, arising out of the procedures set forth in the employee handbook, to undertake a third Performance Improvement Plan when he failed to maintain an acceptable attendance record following the completion of the second ninety-day Performance Improvement Plan. In *Hart, supra,* pp 565-566, this Court held that an action in tort may not be maintained for failure to perform a contract:

> We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged. *What we are left with is defendant's failure to complete his contracted-for performance. This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs. A tort action will not lie.* [Emphasis added.]

In *Hart,* the defendant worked the plaintiff's orchard during the spring of 1952, but "refused to go on" shortly after beginning work for the 1953 season. "He thereafter failed to remove the shoots, to prune, to fertilize, or to protect it against destructive animal life."[7]

In the instant case, as in *Hart,* "[w]hat we are left with is defendant's [alleged] failure to complete his contracted-for performance."[8] Here, as there, the contracted-for performance is not "a duty imposed by the law upon all," but, rather, "a duty arising out of the intentions of the parties

---

[7] *Id.,* p 560.

[8] *Id.,* p 565.

themselves and owed only to those specific individuals to whom the promise runs."[9]

VI

In *Valentine v General American Credit, Inc,* 420 Mich 256, 258-259; 362 NW2d 628 (1984), this Court said that "[e]mployers and employees remain free to provide, or not to provide, for job security. Absent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason."[10]

Absent an employer's agreement to provide job security or to discharge only for cause, the employment relationship is at the will of both parties. Ferrett was essentially an at-will employee—his employment was month to month—and therefore he did not have a contractual right to be evaluated or correctly evaluated before the employer exercised its right to discharge him at will.

---

[9] *Id.,* pp 565-566.

[10] In *Valentine, supra,* p 259, "an action for breach of contract and not a tort action," this Court affirmed the decision of the Court of Appeals affirming the decision of the trial court dismissing claims for mental distress and exemplary damages in an action claiming wrongful discharge. This Court said:

> We conclude, because an employment contract is not entered into primarily to secure the protection of personal interests and pecuniary damages can be estimated with reasonable certainty, that a person discharged in breach of an employment contract may not recover mental distress damages. [*Id.,* p 263.]

*Valentine* adverted to this Court's decision in *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 420-421; 295 NW2d 50 (1980), where this Court said:

> [A]bsent allegation and proof of tortious conduct existing independent of the breach, . . . exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract.

Just as the law did not impose on the person who agreed to work the orchard in *Hart v Ludwig* a duty to complete the contracted-for performance, or the defendant in *Valentine* a duty to provide job security, neither does it impose on GM a common-law obligation to evaluate or correctly evaluate Ferrett before exercising its right to discharge him at will. There is, thus, no right arising at common law as a matter of public policy, separate and distinct from any contractual right,[11] to be evaluated or correctly evaluated before being discharged from employment.

Cases recognizing a right to maintain an action in tort arising out of a breach of contract by the defendant, generally involve a separate and distinct duty imposed by law for the benefit of the plaintiff that provides a right to maintain an action without regard to whether there was a contractual relationship between the plaintiff and the defendant. In *Clark v Dalman,* 379 Mich 251, 261, 262; 150 NW2d 755 (1967), the duty "imposed by law" was "[t]he general duty of a contractor to

[11] In *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 604; 374 NW2d 905 (1985), where this Court ruled that the plaintiffs had failed to meet the threshold requirements of proof to make out a prima facie case of intentional infliction of emotional distress, this Court referred to *Hart v Ludwig* and said that there "we recognized that mere nonfeasance of a contractual obligation cannot give rise to a negligence cause of action in tort," and quoted with particular approval the following language quoted in *Hart v Ludwig:*

"As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract."

See also the following:

There is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. [Prosser & Keeton, Torts (5th ed), § 92, p 657.]

act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site of the project . . . ."

## VII

We conclude that because there is no separate and distinct duty imposed by law to evaluate or correctly evaluate employees, Ferrett cannot maintain an action in tort against GM because it failed to undertake a third Performance Improvement Plan, or otherwise evaluate or reëvaluate him[12] before exercising its right to discharge him at will without regard to whether there was or was not cause to terminate his employment.

Affirmed.

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with LEVIN, J.

---

[12] Cases rejecting a tort of negligent evaluation generally draw no distinction between a failure to evaluate and negligence in the evaluation.