SHERMAN v SEA RAY BOATS, INC

Docket No. 227450. Submitted March 5, 2002, at Detroit. Decided April 26, 2002, at 9:10 A.M.

Janet C. Sherman brought an action in the Wayne Circuit Court against Sea Ray Boats, Inc., after discovering wood rot in a boat manufactured by Sea Ray and purchased by Sherman fourteen years earlier. The plaintiff alleged breach of implied warranty of fitness and merchantability under the Uniform Commercial Code (UCC), MCL 440.2314; breach of express warranty under the UCC, MCL 440.2313; negligence; design defect; violation of the Magnuson-Moss Warranty Act, 15 USC 2301; breach of implied warranty of merchantability under the Magnuson-Moss Warranty Act; violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; and breach of contract. In response to a motion by the defendant, venue was transferred to the Macomb Circuit Court, John B. Bruff, J., which granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff's tort claims are barred by the economic loss doctrine. Where a purchaser's expectations in a sale are frustrated because the product purchased is not working properly, the remedy for the economic loss is in contract alone.

2. The plaintiff's claims for breach of warranty, breach of contract, and violation of consumer protections are barred by the statute of limitations, MCL 440.2725. Contrary to the plaintiff's contention, the owner's manual for the boat did not extend the limitation period for the breach of warranty claim with respect to the boat's future performance by making references to "years of trouble free boating" and "family fun for many years to come." The plaintiff's remaining warranty and consumer protection claims were properly dismissed pursuant to *Snyder v Boston Whaler, Inc*, 892 F Supp 955 (WD Mich, 1994). The plaintiff failed to cite supporting authority for the proposition that her allegations of fraud serve to revive her claim for breach of contract.

Affirmed.

.

CONTRACTS — TORTS — ECONOMIC LOSS DOCTRINE.
>    The remedy for the economic loss where a purchaser's expectations
>    in a sale are frustrated because the product purchased is not work-
>    ing properly is in contract alone; accordingly, tort claims seeking
>    damages for economic loss arising out of the failure of the product
>    are barred.

*Harvey Kruse, P.C.* (by *James Sukkar* and *Paul M. Bogos*), for the plaintiff.

*D'Luge, Miles & Miles, P.L.C.* (by *Brian J. Miles*), for the defendant.

Before: HOOD, P.J., and GAGE and MURRAY, JJ.

HOOD, P.J. Plaintiff appeals as of right from the trial court's orders granting motions for summary disposition and reconsideration by defendant Sea Ray Boats, Inc. We affirm.

On August 23, 1999, plaintiff filed a complaint based on the sale of a boat that occurred on June 15, 1985. Specifically, plaintiff alleged that she purchased a new 1985 Sea Ray boat manufactured by defendant from K & M Boat Company.[1] Plaintiff alleged that she purchased the boat with the legitimate expectation that its useful life would exceed twenty-five years. Plaintiff maintained the boat in accordance with the instructions provided in the owner's manual. There were no special or cautionary instructions addressing the care of the wood encased by the fiberglass structural members of the boat. In June 1997, plaintiff noticed an area of decaying wood shelving near the starboard battery. Plaintiff obtained a $4,310.50 repair estimate and authorized the repair in November 1997. Plaintiff alleged that the repair uncovered extensive

---

[1] K & M Boat Company was dismissed from the litigation at the trial level and is not a party to this appeal.

"latent decay" in seventy-six percent of the stringers, bulkheads, and framing. Plaintiff allegedly received a repair estimate of $38,585.50 on August 18, 1998. Plaintiff suspended the repair effort and tendered a claim to defendant. Approximately one year after receiving notice of the repair costs, plaintiff filed this litigation.

In her complaint, plaintiff raised the following claims against defendant: (1) breach of implied warranty of fitness and merchantability under the Uniform Commercial Code (UCC), MCL 440.2314; (2) breach of express warranty under the UCC, MCL 440.2313; (3) negligence; (4) design defect; (5) violation of the Magnuson-Moss Warranty Act, 15 USC 2301 *et seq.*; (6) breach of implied warranty of merchantability of the Magnuson-Moss Warranty Act; (7) violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*; and (8) breach of contract. Defendant moved for summary disposition pursuant to MCR 2.116(C)(7) or (C)(8).[2] The trial court granted the motion for summary disposition with respect to all claims except "any negligence claims based on a product liability theory." Defendant moved for reconsideration of the denial of summary disposition with regard to the remaining tort claims, and the trial court granted the motion.

This case requires a consideration of the economic loss doctrine under Michigan law. The economic loss doctrine provides that "where a purchaser's expecta-

---

[2] This litigation was originally filed in the Wayne Circuit Court. Defendant's motion for summary disposition requested a change of venue as alternative relief. The trial court granted the motion for change of venue only, and the merits of the summary disposition motion were addressed after the case was transferred to the Macomb Circuit Court.

tions in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Huron Tool & Engineering Co v Precision Consulting*, 209 Mich App 365, 368; 532 NW2d 541 (1995). In *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512; 486 NW2d 612 (1992), our Supreme Court adopted the economic loss doctrine. In *Neibarger*, the plaintiffs, owners and operators of a dairy farm, purchased a milking system designed by the defendant. After the system was installed in 1979, the plaintiffs' cattle died or were sold because of nonproductivity. The plaintiffs alleged that they did not discover, until 1986, that the vacuum system on the milking equipment had been improperly designed and installed. Consequently, in 1987, the plaintiffs filed suit alleging breach of express warranty, breach of implied warranty, and negligence. The Supreme Court held that the plaintiffs' exclusive remedy of recovery for economic loss caused by a defective product purchased for commercial purposes was provided by the UCC. The Supreme Court explained its basis for adoption of the doctrine:

> A contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the Legislature in adopting the UCC. The code represents a carefully considered approach to governing "the economic relations between suppliers and consumers of goods." If a commercial purchaser were allowed to sue in tort to recover economic loss, the UCC provisions designed to govern such disputes, which allow limitation or elimination of warranties and consequential damages, require notice to the seller, and limit the time in which such a suit must be filed, could be entirely avoided. In that event, Article 2 would be rendered meaningless and, as stated by

the Supreme Court in *East River* [*East River Steamship Corp v Transamerica Delaval, Inc,* 476 US 858; 106 S Ct 2295; 90 L Ed 2d 865 (1986)], *supra* at 866, "contract law would drown in a sea of tort."

Rejection of the economic loss doctrine would, in effect, create a remedy not contemplated by the Legislature when it adopted the UCC by permitting a potentially large recovery in tort for what may be a minor defect in quality. On the other hand, adoption of the economic loss doctrine will allow sellers to predict with greater certainty their potential liability for product failure and to incorporate those predictions into the price or terms of the sale.

Adoption of the economic loss doctrine is consistent with the stated purposes of the UCC. The availability of a tort action for economic loss would "only add more confusion in an area already plagued with overlapping and conflicting theories of recovery," while preclusion of such actions will lead to the simplification, clarification, and modernization of commercial law called for by § 1-102(2)(a). Moreover, because a majority of other jurisdictions have adopted the economic loss doctrine, our decision here will promote the uniformity called for in § 1-102(2)(c). [*Neibarger, supra* at 528-529.]

Although they were dairy farmers, there was no indication that the plaintiffs had any expertise in milking systems, and the plaintiffs alleged that the statute of limitations governing products liability law applied. The Supreme Court concluded that the proper approach to determining the applicability of the economic loss doctrine required evaluation of the underlying policies of tort and contract law as well as the nature of the damages. *Id.* at 531. The Supreme Court examined the nature of the damages from the defective milking system, lost profits, and consequential damages, and determined that the action fell within the principles of the economic loss doctrine and was

governed by the UCC and its statute of limitations. *Id.* at 533.

The parties dispute the extent of the application of the *Neibarger* decision to this transaction, the sale of a boat to an individual consumer for recreational purposes.[3] When determining the propriety of adoption of the economic loss doctrine, our Supreme Court noted the rationale for the doctrine cited by various jurisdictions. From these cited decisions, there is dicta in *Neibarger* to support the respective positions of each party. For example, the breach of warranty upon delivery provisions may be satisfactory in commercial settings, but are inconsistent with consumer actions against manufacturers for personal injury,[4] a proposition that supports plaintiff's position that the economic loss doctrine does not apply. However, it was also noted that, while a consumer should not be charged with bearing the risk of physical injury from

---

[3] It is deceptive that plaintiff refers to consumer as opposed to commercial transactions. Black's Law Dictionary (7th ed), p 263, defines "commercial law" as

> the substantive law dealing with the sale and distribution of goods, the financing of credit transactions on the security of the goods sold, and negotiable instruments. . . . Although the term commercial law is not a term of art in American law it has become synonymous in recent years with the legal rules contained in the Uniform Commercial Code. [Citations omitted.]

A contract involving the sale of goods is actionable under the UCC. MCL 440.2102; *Citizens Ins Co v Osmose Wood Preserving, Inc*, 231 Mich App 40, 45; 585 NW2d 314 (1998). Additionally, the UCC has been applied to a transaction in goods sold to a consumer. See, e.g., *Leavitt v Monaco Coach Corp*, 241 Mich App 288, 291; 616 NW2d 175 (2000). Plaintiff alleges that a consumer, as opposed to a business, occupies a different bargaining position in a transaction involving a sale of goods from a merchant or manufacturer.

[4] *Neibarger, supra* at 522, citing *Parish v B F Goodrich Co*, 395 Mich 271, 278; 235 NW2d 570 (1975).

a product, the consumer may be charged with the risk that the product will not match his economic expectations unless the manufacturer agrees to it.[5] Because of the disparity in the underlying rationale and the failure, in some contexts, to define the term "commercial," defendant requests that we adopt the federal maritime economic loss doctrine and apply it to this transaction. However, we conclude that plaintiff's tort actions are precluded by principles of Michigan law that evolved into the economic loss doctrine and that resort to federal doctrine is unnecessary.

In *Hart v Ludwig*, 347 Mich 559, 560; 79 NW2d 895 (1956), the parties entered into an oral contract for the care and maintenance of an orchard owned by the plaintiff. The defendant worked the orchard during the spring of 1952, but shortly after beginning work for the 1953 season, he refused to continue for unknown reasons. His alleged omissions included the failure to remove the shoots, to prune, to fertilize, and to protect against destructive animals. The plaintiff alleged that these omissions constituted negligence. *Id.*

The Supreme Court examined whether an action in contract could also support an action for tort and concluded:

> We have simply the violation of a promise to perform the agreement. The only duty, other than that voluntarily assumed in the contract to which the defendant was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged. What we are left with is defendant's failure to complete his contracted-for performance. This is

---

[5] *Neibarger, supra* at 527, quoting *Seely v White Motor Co*, 63 Cal 2d 9, 18; 45 Cal Rptr 17; 403 P2d 145 (1965).

> not a duty imposed by the law upon all, the violation of
> which gives rise to a tort action, but a duty arising out of
> the intentions of the parties themselves and owed only to
> those specific individuals to whom the promise runs. A tort
> action will not lie. [*Hart, supra* at 565-566.]

The analysis of whether a duty arose that was sepa-
rate and distinct from a contractual duty was not pre-
mised on or affected by the relationship of the par-
ties. That is, whether the parties were of equal bar-
gaining power was not a precursor to application of
this duty principle.

The principles of *Hart* continue to be applied. In
*Ferrett v General Motors Corp*, 438 Mich 235, 245; 475
NW2d 243 (1991), the Court held that there was no
right arising at common law as a matter of public pol-
icy, separate and distinct from any contractual right,
to be evaluated or correctly evaluated before being
discharged from employment. The Court stated:

> Cases recognizing a right to maintain an action in tort
> arising out of a breach of contract by the defendant, gener-
> ally involve a separate and distinct duty imposed by law for
> the benefit of the plaintiff that provides a right to maintain
> an action without regard to whether there was a contrac-
> tual relationship between the plaintiff and the defendant
> . . . .
>
> We conclude that because there is no separate and dis-
> tinct duty imposed by law to evaluate or correctly evaluate
> employees, Ferrett cannot maintain an action in tort against
> GM because it failed to undertake a third Performance
> Improvement Plan, or otherwise evaluate or reëvaluate him
> before exercising its right to discharge him at will without
> regard to whether there was or was not cause to terminate
> his employment. [*Id.* at 245-246.]

While plaintiff alleges that the maintenance of a
tort action is appropriate because of "consumer"

involvement in the sale of goods, a "consumer" transaction was held to be commercial despite the lack of equal bargaining power or knowledge held by the defendant. In *Ulrich v Federal Land Bank of St Paul*, 192 Mich App 194, 195; 480 NW2d 910 (1991), the plaintiffs, dairy farmers, borrowed $220,000 from the defendant Federal Land Bank (FLB) and secured the note by granting a mortgage on their farm to the defendant in 1980. In 1984, the plaintiffs stopped making payments on the note. The defendant foreclosed on the mortgage and purchased the plaintiffs' property at the foreclosure sale. The plaintiffs were unable to redeem within one year and were eventually evicted. The plaintiffs filed suit in 1986, alleging that the foreclosure was invalid, and pleaded theories of breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, breach of contract, and negligence. The trial court granted the defendant's motion for summary disposition of all claims. *Id.*

The plaintiffs alleged a claim of negligence by the defendant FLB for failing to thoroughly research the fact that the plaintiffs could not generate enough cash flow to service the loan. This Court held that the plaintiffs failed to state a cause of action in negligence. While aware that other jurisdictions impose a duty of reasonable care in processing loan applications, this Court rejected such an action in Michigan:

> It has often been stated that the sometimes hazy distinction between contract and tort actions is made by applying the following rule: if a relation exists that would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise it will not. See *Hart v Ludwig*, 347 Mich 559, 565; 79 NW2d 895 (1956); *Nelson v Northwestern Savings & Loan Ass'n*, 146 Mich App 505; 381 NW2d 558 (1985); *Brewster v Martin Marietta Alumi-*

*num Sales, Inc*, 145 Mich App 641, 667-668; 378 NW2d 558 (1985). In the present case, plaintiffs have no contract right to enforce; they have already received the benefit of FLB's contractual promise to loan them $220,000. Thus, the question is whether FLB had a legal duty to exercise reasonable care in determining plaintiffs' eligibility for a loan. Despite plaintiffs' status as farmers, *this case concerns a commercial transaction.* We have already determined that no fiduciary duties existed between the parties on the facts alleged by plaintiffs. We now decline to create what is essentially a backdoor defense to the enforcement of plaintiffs' obligations by allowing plaintiffs to later claim that FLB acted negligently in allowing them to enter the contract in the first place. We therefore hold that, on the facts of this case, FLB had no independent legal duty to exercise reasonable care in determining plaintiffs' eligibility for a loan. Summary disposition was proper. [*Id.* at 199-200 (emphasis added).]

Even though the plaintiffs, farmers, arguably could not have been deemed to be of equal knowledge or standing as the defendant bank, this Court nonetheless construed the transaction as commercial. Accordingly, in Michigan, the principles in *Hart* have been applied in circumstances where an employee or consumer purchases goods or enters into a transaction with an entity of greater knowledge or bargaining power.

Plaintiff's argument, that the economic loss doctrine applies only to "commercial" or "non-consumer" transactions, is without merit because case law provides that the principles of *Hart* evolved into the economic loss doctrine now applied to the UCC. In *Rinaldo's Const Corp v Michigan Bell Telephone Co*, 454 Mich 65, 67; 559 NW2d 647 (1997), the plaintiff, a commercial and residential construction company, moved its place of business. The defendant transferred the plaintiff's telephone service to the new

address. However, the plaintiff experienced various problems with the service and filed a cause of action in negligence in the circuit court. The defendant moved for summary disposition, arguing that the Michigan Public Service Commission (MPSC) had primary jurisdiction over the claim. The Supreme Court held that the jurisdictional question was resolved by whether the facts pleaded gave rise to a legal duty in tort independent of breach of contract. *Id.* at 82.

The Supreme Court then examined *Hart* and the distinction between misfeasance and nonfeasance to determine whether a negligence claim could be maintained by the plaintiff. The Court noted the distinctions:

> Prosser and Keeton discuss the distinction further:
>
> *"Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things.* Generally speaking, there is a duty to exercise reasonable care in how one acts to avoid physical harm to persons and tangible things. Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there was a preexisting obligation or duty to avoid harm when one acts." [Torts, § 92, pp 656-657.]
>
> This duty, however, does not extend to "intangible economic losses." *Id.* at 657. For this type of loss, "the manifested intent of the parties should ordinarily control the nature and extent of the obligations of the parties . . . ." *Id. In addition to acknowledging this distinction at least as far back as* Hart, *the distinction has more recently been applied to sales contracts under the UCC under the rubric of the "economic loss doctrine." Neibarger v Universal Cooperatives*, 439 Mich 512, 527; 486 NW2d 612 (1992). The concept has been approved in other contexts. See *Corl v Huron Castings, Inc*, 450 Mich 620, 626-628; 544 NW2d 278 (1996) (refusing to apply the collateral source rule for tort

damages to an employment contract); *Ferrett v General Motors Corp*, 438 Mich 235, 243; 475 NW2d 243 (1991) (refusing to recognize a cause of action in tort for negligent evaluation of an employee).

   In this case, as in *Hart*, the defendant agreed to provide the plaintiff with services under a contract. Like the defendant in *Hart*, Michigan Bell allegedly failed to fully perform according to the terms of its promise. While plaintiff's allegations arguably make out a claim for "negligent performance" of the contract, there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege violation of an independent legal duty distinct from the duties arising out of the contractual relationship. Like the plaintiff in *Valentine* [*v Michigan Bell Telephone Co*, 388 Mich 19; 199 NW2d 182 (1972)], "regardless of the variety of names (plaintiff gives the) claim, (plaintiff is) basically complaining of inadequate service and equipment . . . ." *Id.* at 22. Thus, under the principles outlined above, there is no cognizable cause of action in tort. [*Rinaldo's, supra* at 84-85 (emphasis added).]

Thus, Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established. In order to make this difficult distinction, an analysis of whether the omission is based on misfeasance or nonfeasance occurs. *Hart, supra.* If the omission is one of nonfeasance, a failure to act, the action lies in contract only. *Id.*

Having concluded that the *Hart* principles apply to this type of transaction, the issue becomes whether plaintiff's negligence action, alleging failure to instruct, caution, and warn is based on misfeasance or nonfeasance. In *Nelson v Northwestern Savings & Loan Ass'n*, 146 Mich App 505, 506; 381 NW2d 757 (1985), the parties entered into a mortgage agree-

ment. Pursuant to the terms of the agreement, the defendant was to pay, from escrow, the fire insurance premiums due on the plaintiffs' home. The plaintiffs' home was destroyed by fire. Nine days later, the defendant received a notice of cancellation of the policy for nonpayment of the premium. This Court noted that the mere use of the terms "neglect" or "negligence" could not transform a breach of contract claim to a negligence claim. *Id.* at 509. The Court then held that the factual basis of the claim alleged nonfeasance for which no legal duty existed that could not be fulfilled by the enforcement of the contract itself. *Id.*

Applying the cited principles to the facts of this case, plaintiff's negligence claim based on failure to warn, caution, and instruct, is a claim of nonfeasance for which there is no duty alleged that is separate and distinct from a claim of breach of contract. Therefore, the trial court properly dismissed the negligence action.

Our conclusion is consistent with the principles and test stated in *Neibarger*. While plaintiff alleges that the application of the economic loss doctrine is contingent on whether a consumer is involved in the transaction, the test enunciated by the *Neibarger* Court provides that "the proper approach requires consideration of the underlying policies of tort and contract law as well as the nature of the damages." In this case, even if plaintiff could support a claim of negligence, any harm did not result in physical injury, but structural damage to the boat only. The nature of damages arises not from physical harm, but loss of economic expectation in the product. Additionally, the overriding concern of the economic loss doctrine

provides that where a plaintiff seeks damages for economic losses only, tort concerns with product safety no longer apply, and economic expectation issues prevail. This conclusion is buttressed by the doctrine's origins from *Hart's* duty principle.[6]

Furthermore, in *Citizens Ins Co v Osmose Wood Preserving, Inc*, 231 Mich App 40; 585 NW2d 314 (1998), the defendant provided flame retardant chemicals that treated wood trusses and decking that was utilized in the construction of a restaurant. At least twelve years later, the materials treated with the defendant's chemicals collapsed. This Court rejected the plaintiff's attempts to distinguish *Neibarger* on its facts. Rather, this Court held that the plaintiff despite the fact that the insured owner was not in a position to negotiate the sale or foresee the injury, could not avoid the economic loss doctrine, even in the absence of privity of contract.[7] *Id.* at 45. This Court also rejected the plaintiff's fraud in the inducement claim, holding that the claim was merely a restatement of the breach of warranty claim and did not fall outside the ambit of the economic loss doctrine. *Id.* at 46.

---

[6] The decision of *MASB-SEG Property/Casualty Pool, Inc v Metalux*, 231 Mich App 393, 402; 586 NW2d 549 (1998), is also noteworthy. The *Metalux* Court concluded that it was appropriate to examine not only the parties involved, but the nature of the *use* of the product. In the present case, plaintiff purchased a wood boat that was used for recreational purposes in water. Damage to the boat was discovered twelve years after purchase. While plaintiff alleges that a distinction between her status as an individual consumer and a business entity should be established, in this context it is unlikely that her consumer status had an effect. That is, it is unlikely that a business entity could have negotiated a warranty for the period at issue in light of the foundational materials of the product that were placed in water.

[7] We note that, in the present case, the parties have not raised, addressed, or disputed any privity of contract issues. Therefore, we do not address it.

We note that plaintiff has also alleged a tort claim of design defect. However, this claim also contains a duty element. Specifically, a manufacturer has a duty to design its product to eliminate any unreasonable risk of foreseeable injury. *Ghrist v Chrysler Corp*, 451 Mich 242, 248; 547 NW2d 272 (1996). On the basis of the principles delineated in *Hart*, summary disposition of this claim was also proper. Additionally, summary disposition was proper where plaintiff's tort actions were merely restatements of the breach of warranty and breach of contract claims. *Citizens*, *supra*; see also *Maiden v Rozwood*, 461 Mich 109, 135; 597 NW2d 817 (1999) (the gravamen of a plaintiff's action is determined by considering the entire claim that cannot be avoided by artful pleading).[8] Accordingly, the contractual claims raised by plaintiff bar the tort claims where the alleged duty breached is based on nonfeasance. *Hart, supra*; *Nelson, supra*.

Plaintiff next argues that the trial court erred in granting summary disposition of her various claims for breach of warranty, breach of contract, and violation of consumer protections because the relevant statute of limitations did not expire. We disagree. Specifically, plaintiff argues that the breach of warranty

---

[8] Defendant requests that this Court adopt the federal economic loss doctrine because its application clearly supports its entitlement to summary disposition pursuant to *East River, supra*. However, even if we had concluded that the economic loss doctrine was inapplicable to plaintiff as an individual consumer, defendant failed to cite authority for the proposition that we may disregard Michigan precedent and adopt federal law. Furthermore, to fall within admiralty jurisdiction, the wrong must have occurred on navigable waters and the wrong must bear a significant relationship to traditional maritime activity. *East River, supra* at 863-864. There are insufficient allegations in the complaint to determine whether this test has been satisfied. Jurisdictional issues and other issues aside, we note that our conclusion is consistent with the application of the federal economic loss doctrine applied in *East River, supra*.

claim was extended, pursuant to MCL 440.2725, on the basis of language contained in the owner's manual. MCL 440.2725 provides:

> (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In the present case, plaintiff contends that while the breach of warranty claim otherwise would have been subject to a one-year period of limitation, the owner's manual extended the period by providing that an owner would enjoy years of trouble-free boating. However, in the record below, plaintiff did not submit any portion of the owner's manual. This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal. *Reeves v Kmart Corp*, 229 Mich App 466, 481, n 7; 582 NW2d 841 (1998). Accordingly, plaintiff's reliance on the owner's manual to extend the warranty period is not supported by the record below. However, assuming that plaintiff had filed this documentation in the record below, it fails to extend the statute of limitations twelve years after purchase.

In the pages of the owner's manual submitted by plaintiff, the manual refers to "years of trouble free boating" and "family fun for many years to come."

However, these statements in the manual fail to identify an explicit extension to future performance. *Baker v DEC Int'l*, 458 Mich 247, 251, n 7; 580 NW2d 894 (1998); see also *Snyder v Boston Whaler, Inc*, 892 F Supp 955 (W D Mich, 1994). Accordingly, without an express duration of the future period, the cause of action accrued at the tender of delivery, and the limitation period expired. Therefore, this issue is without merit. Furthermore, we note that plaintiff's remaining warranty and consumer protection claims were properly dismissed pursuant to *Snyder, supra*. Lastly, we note that plaintiff's allegation that her breach of contract claim is extended by fraud principles is without merit. Plaintiff fails to cite any authority indicating that a fraud claim may revive a contract action. "A party may not leave it to this Court to search for authority to sustain or reject its position." *Staff v Johnson*, 242 Mich App 521, 529; 619 NW2d 57 (2000).[9]

Affirmed.

---

[9] Because of our conclusion regarding the propriety of dismissal of the entire complaint, we need not address the change of venue issue.