*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RASHOND DION LARKIN,

Defendant-Appellant.

UNPUBLISHED
September 26, 2019

No. 341303
Wayne Circuit Court
LC No. 17-003085-01-FC

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life imprisonment without the chance for parole on the first-degree murder conviction and to the mandatory two-year consecutive term for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

Defendant was convicted of murdering Cleveland Gregory, Jr. on the night of August 17, 2014. The evidence showed that Gregory called his wife at 9:51 p.m. and told her that he was going to meet with defendant. Gregory explained to her that defendant had called him while he was on his way home and that Gregory was going to meet defendant in the area of Seven Mile Road and Woodward to get some money from him. When she called back several times within the hour, Gregory did not answer. The police were alerted that shots had been fired on Danbury Street around 10:30 p.m. Gregory was found with gunshot wounds in his back, right arm, left chest, and left forearm.

Lester Simpson testified that he had received a call from defendant on the evening of August 17, 2014, asking to be picked up near Eleven Mile Road and Dequindre. After picking defendant up, defendant asked Simpson to take him to near Seven Mile Road and John R, which Simpson did.

Simpson gave different versions of what happened next. In a sworn statement he made pursuant to an investigative subpoena, Simpson claimed he was driving his "Crown Vic" when he picked defendant up. After dropping defendant off, he met his fiancée and exchanged the

-1-

"Crown Vic" for a Chrysler Town & Country minivan. Thereafter, he received another cell phone call from defendant. In his preliminary examination testimony and his trial testimony, Simpson claimed he was still driving the Crown Vic when he received the phone call from defendant. In this call, which he concluded was a "pocket dial,"[1] he could hear defendant giving driving directions to someone and mentioning either Derby or Danbury Street, after which Simpson heard several gunshots. Concerned, Simpson drove to Danbury Street and saw defendant running down the street and past his vehicle. Simpson claimed he yelled defendant's name, but defendant did not respond and ran out of view. Simpson started to drive after him, and then received another cell phone call in which defendant asked Simpson to come and pick him up. Simpson refused, but shortly afterward he drove to defendant's home, where he found defendant together with his friend, Montez Clayton. Defendant and Clayton were discussing defendant's shooting of Gregory; defendant explained that he shot Gregory rather than pay him for some "weed" that Gregory had provided to him. While he was at defendant's home, Simpson observed defendant get a gasoline can and burn the clothes he had been wearing that night. Simpson said that he got nervous and left.

Roderick Henry, who made the 911 call, told police that he heard four gunshots and that he saw a man getting out of the passenger side door of what proved to be Gregory's vehicle.[2] The man ran to a waiting silver or blue Chrysler minivan, got in, and then the minivan sped away, driving the wrong way on Danbury, which was a one-way street. The responding officers found the passenger door of Gregory's GMC Envoy open and Gregory dead inside the vehicle. A police technician took swabs inside the vehicle and subsequent analysis showed that defendant was the major contributor of the DNA recovered from the swab of the outside door handle and the swab from the inside of the passenger's door.

The police also did an analysis of the cell phones belonging to Gregory, defendant, and Clayton. The cell phone data showed that defendant had called Gregory at 9:04 p.m., 9:41 p.m., and 10:07 p.m. Gregory had called his wife at 9:51 p.m. Defendant called Simpson at 10:16 p.m. and then again at 10:17 p.m. in a call that lasted 12 minutes and 45 seconds (thereby terminated at around 10:29 p.m. or 10:30 p.m.). The 911 call was made at 10:29:35. Defendant called Simpson again at 10:30 p.m., 10:31 p.m., 10:36 p.m., and 10:49 p.m. The cell phone data analysis also allowed the police to plot the approximate location of the cell phones when the various calls were placed. Thus, they were able to demonstrate that at the time of the murder, both Gregory's and defendant's cell phones were in the general area of the murder scene.

---

[1] To "pocket-call" someone is call the person accidentally, usually by the inadvertent pressing of the phone screen when it is in the owner's pocket or bag. See MacMillan Dictionary <https://www.macmillandictionary.com/us/dictrionary/american/pocket-dial> (accessed ____).

[2] Henry was not found and did not testify at trial. Some of his statements to a responding officer were relayed to the jury through the testimony of the officer. Henry's non-appearance as a witness is discussed further, *infra*.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims on appeal that his trial counsel failed to provide constitutionally effective representation. Because no evidentiary hearing was held, our review is limited to mistakes apparent on the existing record. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997).

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47, 51; 826 NW2d 136 (2012). To demonstrate that his counsel was ineffective, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. at 51. "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

In the argument section of his brief on appeal, defendant claims that his trial counsel was ineffective for failing to produce Henry as a witness at trial and for failing to file a witness list.[3] We disagree.

Henry initially was interviewed on the night of the murder by Officer Antaeus Evans, and Officer Evans testified about this interview at trial. In his testimony, Officer Evans stated that Henry had heard three or four shots fired and then had seen a silver or blue Chrysler Town & Country minivan "fleeing the scene," driving the wrong way on Danbury.

Defendant has failed to show how not calling or obtaining Henry's testimony as a witness was unreasonable. First, there is nothing on the record to show that Henry's testimony would have aided the defense's theory that defendant was not the person Henry saw. Notably, the lower court record is silent with regard to how Henry described the person leaving the scene of the crime. Accordingly, defendant has emphatically failed to show that (1) the failure to call Henry as a witness was a decision falling below the objective level of reasonableness or (2) if Henry had testified, there was a reasonable probability that the result of the trial would have been

---

[3] To the extent any other aspects of this issue were "raised" elsewhere in his brief on appeal, they are abandoned. While in the "Principal Point of Argument" portion of his brief, defendant lists six different things his trial counsel did to which defendant presumably takes exception, defendant only references the failure to call Henry as a witness and the failure to file a witness list in the "Law and Argument" section of his brief. Accordingly, these properly briefed aspects are before us, but the other aspects of the issue with no argument are abandoned. See *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014) ("Defendant's failure to properly argue the merits of the issue results in it being abandoned.").

different.  See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (stating that a defendant has the burden to prove the factual predicate of his claim of ineffective assistance).

We note that defendant attempts to convey what Henry saw by purportedly quoting in defendant's brief on appeal Henry's statement to the police.  However, Henry's statement is not from the lower court record.  Thus, it is not properly considered.  See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal."); *Williams*, 223 Mich App at 414 (confining review to "mistakes apparent from the record").

Moreover, assuming Henry's statement is as defendant has quoted in his brief and assuming it was properly before us, if the jury had been exposed to testimony consistent with this statement, there was not a reasonable probability that the jury would have come to a different conclusion.  Henry's testimony regarding hearing shots fired and seeing a blue or silver Chrysler minivan flee from the scene were provided to the jury through Officer Evans' testimony.  The only aspect of Henry's statement that the jury did not hear was Henry's description of the perpetrator.  Notably, in Henry's purported statement, Henry described the shooter as a black male, ranging from 5'8" to 6'0" in height, with a slim build and dark complexion, and having a mustache.  From defendant's information and picture on the Department of Corrections' website, Henry's description appears to be wholly consistent with defendant's appearance.[4]  Defendant, however, points out two potential inconsistencies in Henry's statement.  The first inconsistency defendant notes is that Henry described the shooter as being in his "mid 20's," while defendant had just recently turned 31 years of age at the time of the shooting.  This slight inconsistency would not have affected the jury's deliberation.  It is commonly understood that people may look younger or older than what they really are, and in this case, it is readily understandable how someone who just turned 31 could look like he was a few years younger.  The other alleged inconsistency is that Henry described the shooter as wearing a "hoodie," but Simpson's description of defendant had defendant wearing a "muscle shirt."  To call this an "inconsistency" is misleading because Simpson stated that while he saw defendant wearing the muscle shirt prior to the shooting, he also saw defendant carrying another "shirt" in his hand.  This other "shirt" could have been the hoodie.  Accordingly, it would be reasonable to assume that defendant later might have donned the hoodie over his muscle shirt to help hide his identity since it would have allowed him to pull a hood around his face.  This could have been trial counsel's concern as well, as counsel had the opportunity to stipulate to the contents of Henry's statement, but she declined to do so because she would not agree to allow his description of the shooter to be admitted.  Given our analysis, this was a reasonable and principled decision.

Therefore, on the present record, defendant has failed to prove that by failing to call Henry as a witness, his trial counsel was ineffective.  He also cannot show, assuming counsel's

---

[4] Defendant is shown as a black male who is 5'11" tall, weighing 155 lbs., and having a mustache.

See  MDOC  <http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=630717> (accessed _____).

performance was deficient, that defendant suffered any prejudice. Because Henry's purported description of the shooter was substantially similar to defendant's appearance, defendant cannot show how this information would have been a benefit to him at trial.

With respect to defendant's contention that his trial counsel should have filed a witness list, defendant's argument on this topic is grounded in his belief that counsel should have called Henry as a witness. But because we have determined that counsel was not ineffective for failing to call Henry as a witness, it necessarily follows that counsel was not ineffective for failing to submit a witness list with Henry being named as a potential witness.

## II. EVIDENTIARY ISSUES

Defendant next contends that certain evidence and testimony was improperly admitted at trial. Defendant did not object to the admission of any of the testimony or evidence he now challenges. Therefore, the issue is not preserved. See *Heft*, 299 Mich App at 78. This Court reviews unpreserved claims for plain error affecting defendant's substantial rights. *Id*.

Most of defendant's evidentiary issues on appeal concern statements that were attributed to Simpson. At trial, Simpson attempted to avoid testifying (and succeeded to some extent). Thus, by stipulation, his confidential sworn statement taken pursuant to an investigative subpoena and his preliminary examination testimony were read into the record. Simpson was later found, arrested, and brought to court, and he then testified in person.

On appeal, defendant asserts that the following statements were inadmissible: (1) Simpson's out-of-court statements to the police; (2) Simpson's out-of-court investigative subpoena statement; and (3) Simpson's preliminary examination testimony. Initially, there is no indication that the statement to the police was admitted or even offered at trial; defendant does not cite where in the lower court record this statement occurred. Thus, the issue is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Regarding the investigative statement and the preliminary examination testimony, we note that defense counsel stipulated to the admission of these statements. Accordingly, defendant has waived any challenge to the admissibility of these statements, thereby extinguishing any error. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

Defendant also claims that Simpson's statement made pursuant to the investigative subpoena included "other acts" evidence, which was "improper in the absence of any notice given" to the defense. In other words, defendant argues that the evidence was inadmissible *solely* because the prosecutor failed to comply with the MRE 404(b)(2)[5] requirement of

---

[5] MRE 404(b)(2) provides:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the

providing a pretrial notice of intent to admit this evidence. However, as already discussed, the admission of the statement made pursuant to the investigative subpoena was agreed upon by defense counsel. Accordingly, any issue is waived and any error is extinguished. *Id.*

Finally, defendant challenges the admission of testimony from the victim's wife, relating that the victim told her that he was going to meet defendant. However, this statement of the victim's then-existing intent was not hearsay under the exception codified at MRE 803(3), which states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (3) **Then existing mental, emotional, or physical condition**. A statement of the declarant's *then existing state of mind*, emotion, sensation, or physical condition (*such as intent, plan*, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. [Emphasized italics added.]

Here, the victim's wife testified that the victim said that he was going to meet with defendant on the night of the murder. This statement pertains to the declarant's then-existing state of mind, specifically his present intent or plan; therefore, the statement is a recognized exception to hearsay. As such, the statement was plainly admissible. See *People v Coy*, 258 Mich App 1, 13-15; 669 NW2d 831 (2003) ("[T]he victim's statement of future intent or plan to meet with defendant on the night of her murder falls within the plain meaning of the rule.").

Therefore, defendant has failed to show how it was erroneous for the trial court to have admitted the now-challenged evidence.

## III. JURY INSTRUCTIONS

Defendant claims that the trial court erred by failing to give 13 jury instructions (presumably sua sponte since there was no defense request for these instructions). Defendant's claim that the instructions should have been given is not preserved because defendant failed to request these instructions. See *People v Gonzalez*, 468 Mich 636, 643; 664 NW2d 159 (2003). Thus, our review is for plain error that affected defendant's substantial rights. *Id.*

Defendant has abandoned this issue because he has failed to present any argument demonstrating that any of the jury instructions were appropriate and should have been given by

---

admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

the trial court. Aside from listing the 13 jury instructions he claims should have been provided to the jury, defendant makes only a cursory argument that"[t]here was ample support for all of the jury instructions set forth herein that was not given or requested based on the clear record in this case," and cites no supporting caselaw demonstrating that the instructions were necessary and appropriate, or that the court's failure to give these instructions amounted to plain error that affected defendant's substantial rights. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Because defendant has only listed the instructions that he believes should have been requested and has provided absolutely no reasoning or legal citation to support his belief, this Court will not attempt to speculate about possible arguments defendant might be making, and the issue is abandoned.

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel