*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STATE FARM FIRE AND CASUALTY,

      Plaintiff-Appellant,

v

GENERAL ELECTRIC COMPANY and MIDEA USA, INC.,

      Defendants-Appellees,

and

LG ELECTRONICS USA,

      Defendant.

UNPUBLISHED
January 2, 2020

No. 345992
Midland Circuit Court
LC No. 17-004795-NP

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

PER CURIAM.

In this subrogation case, plaintiff, State Farm Fire and Casualty, appeals the trial court's order granting summary disposition in favor of defendants General Electric Company and Midea USA, Inc.[1] Plaintiff argues that the trial court erred by concluding that the economic loss doctrine applied and that plaintiff's claims were therefore time-barred under the statute of limitations in the Uniform Commercial Code ("UCC"). We reverse and remand for further proceedings consistent with this opinion.

---

[1] During the trial court proceedings, the trial court entered a stipulation and order dismissing LG Electronics USA. The term "defendants" in this opinion refers only to defendants-appellees.

## I. FACTS AND PROCEDURAL BACKGROUND

On June 8, 2015, a dehumidifier in Carla Kolka's home caught fire. A joint destructive laboratory examination of the dehumidifier revealed that the fire was caused by "an internal failure of the overload protector." As a result of the fire, Kolka's home and personal property was damaged, and she was forced to evacuate her home for a period of time. Kolka submitted a claim to plaintiff that exceeded $60,000, and plaintiff paid the claim.

Plaintiff, as subrogee for Kolka, sued defendants alleging product liability, breach of express and implied warranties, and negligence. After the close of discovery, defendants moved for summary disposition. Defendants argued that because plaintiff was only seeking to recover for property loss, as opposed to personal injuries, the economic loss doctrine applied and plaintiff was limited to contract-based recovery under the UCC. Defendants further argued that plaintiff's claims were barred by the UCC's four-year limitation period, which begins to run "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." MCL 440.2725(2). In response, plaintiff argued that summary disposition was improper because the statute of limitations for product liability cases was applicable.

The trial court granted defendants' motion for summary disposition on the basis that the economic loss doctrine applied to the case and therefore, the UCC provided plaintiff's exclusive remedy. The trial court also concluded that any claim under the UCC was barred by MCL 440.2725. Plaintiff filed a motion for reconsideration from the trial court's decision, which was denied. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by applying the economic loss doctrine and by concluding that the UCC's four-year statute of limitations barred plaintiff's claims. We agree.

"[We review] a trial court's ruling on a motion for summary disposition de novo." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 11; 930 NW2d 393 (2018). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*. "If there is no relevant factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). "If, however, a pertinent factual dispute exists, summary disposition is not appropriate." *Id*.

### A. ECONOMIC LOSS DOCTRINE

"The economic-loss doctrine is a judicially created doctrine that bars all tort remedies where the suit is between an aggrieved buyer and a nonperformance seller, the injury consists of damage to the goods themselves, and the only losses alleged are economic." *Sullivan Indus, Inc v Double Seal Glass Co, Inc*, 192 Mich App 333, 339; 480 NW2d 623 (1992). When explaining the rationale of the economic loss doctrine, the *Sullivan* Court cited *Mid-Continent Aircraft Corp v Curry Co Spraying Serv, Inc*, 572 SW2d 308, 312 (Tex, 1978):

> A distinction should be made between the type of "dangerous condition" that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory. [*Sullivan Indus, Inc*, 192 Mich App at 340 (quotation marks omitted).]

The economic loss doctrine was officially adopted in *Neibarger v Univ Coops, Inc*, 439 Mich 512, 527-528; 486 NW2d 612, 618 (1992). In *Neibarger*, the plaintiffs were commercial dairy farmers who purchased a milking system. *Id*. at 516, 518. After the milking system was installed, the cattle developed severe mastitis, lost part of their udders, and suffered a reduction in their milk production. *Id*. Some of the cattle became sick and died, while some had to be sold as beef because they were not producing enough milk and were unsuitable as milking animals. *Id*. at 516-518. Ultimately, the plaintiffs filed a lawsuit, alleging breach of express warranty, breach of implied warranty, and negligence. *Id*. at 516-517, 519.

The *Neibarger* Court held that the plaintiffs' claims fit within the parameters of the economic loss doctrine. *Id*. at 532-533. In so holding, the Court noted that the plaintiffs had purchased the milking machine for a business purpose: to "expand the size of their herds" in order to "increase their incomes." *Id*. at 533. Therefore, the *Neibarger* Court concluded that the damages the plaintiffs suffered (e.g., decreased milk production and cattle medical problems) were nothing more than defeated commercial expectations, which the UCC could best remedy. *Id*. Although the plaintiffs argued that the economic loss doctrine should not apply in cases where a defective product caused injury to property other than the product itself, *id*. at 530, the *Neibarger* Court disagreed:

> The proper approach requires consideration of the underlying policies of tort and contract law as well as the nature of the damages. The essence of a warranty action under the UCC is that the product was not of the quality expected by the buyer or promised by the seller. The standard of quality must be defined by the purpose of the product, the uses for which it was intended, and the agreement of the parties. In many cases, failure of the product to perform as expected will necessarily cause damage to other property; such damage is often not beyond the contemplation of the parties to the agreement. Damage to property, where it is the result of a commercial transaction otherwise within the ambit of the UCC, should not preclude application of the economic loss doctrine where such property

damage necessarily results from the delivery of a product of poor quality. [*Neibarger*, 439 Mich at 531 (citations omitted).]

Although *Neibarger* only applied to commercial transactions, in *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 53-55; 649 NW2d 783 (2002), this Court applied the economic loss doctrine to consumer transactions. In *Sherman*, the plaintiff was a consumer who purchased a boat from the defendant, which manufactured the boat. *Id*. at 42. The plaintiff bought the boat with the "legitimate expectation" that the boat would last 25 years. *Id*. The plaintiff maintained the boat in accordance with the owner's manual, which did not indicate special care was needed to maintain the wood. *Id*. After the plaintiff noticed an area of decaying wood shelving 12 years after the purchase, the plaintiff filed suit against the defendant. *Id*. at 42-43. The *Sherman* Court held that the economic loss doctrine applied to the plaintiff's negligence and design defect claims. *Id*. at 53-55. The Court reasoned:

> While [the] plaintiff alleges that the application of the economic loss doctrine is contingent on whether a consumer is involved in the transaction, the test enunciated by the *Neibarger* Court provides that "the proper approach requires consideration of the underlying policies of tort and contract law as well as the nature of the damages." In this case, even if [the] plaintiff could support a claim of negligence [or design defect], any harm did not result in physical injury, but structural damage to the boat only. The nature of damages arises not from physical harm, but loss of economic expectation in the product. Additionally, the overriding concern of the economic loss doctrine provides that where a plaintiff seeks damages for economic losses only, tort concerns with product safety no longer apply, and economic expectation issues prevail. [*Sherman*, 251 Mich App at 53-54.]

We conclude that this case is distinguishable from *Neibarger* and *Sherman*. In this case, plaintiff's claim rests upon real and personal property damage that went beyond damage to the allegedly defective dehumidifier. Such damages are not the result of disappointment with the dehumidifier's unsatisfactory performance, but of a sudden event allegedly caused by the dehumidifier. See *Neibarger*, 439 Mich at 524, quoting *SM Wilson & Co v Smith Int'l, Inc*, 587 F2d 1363, 1376 (CA 9, 1978) (distinguishing the terms "disappointment" and "disaster"). In *Sherman*, the consumer only complained of disappointed economic expectations—namely that the boat began to decay more quickly than the consumer expected. Although the damages in this case are economic losses in the sense that they are assigned monetary values, there is no basis to conclude that fire damage to Kolka's property "was within the contemplation of the parties" when Kolka purchased the dehumidifier, such that "the occurrence of such damage could have been the subject of negotiations between" Kolka and defendants when Kolka made the purchase. See *Neibarger*, 439 Mich at 532. Indeed, unlike the plaintiffs in *Neibarger*, Kolka is not a sophisticated user with the knowledge and ability to allocate liability in the purchase and sale agreement. Moreover, in *Sherman*, there were no tort concerns regarding the safety of the boat. In this case, however, tort concerns with product safety clearly exist, and allowing plaintiff's action to proceed outside of the UCC would further the public-policy consideration of tort law to encourage the design and production of safe products. See *id*. at 523, 525.

In sum, after considering "the underlying policies of tort and contract law as well as the nature of the damages," see *Neibarger*, 439 Mich at 531, we conclude that the losses caused by fire damage to the property are of the sort traditionally remediable in tort. Therefore, the trial court erred by concluding that the economic loss doctrine applied to the case. Consequently, plaintiff's negligence and product liability claims are not limited to claims under the UCC, and the UCC's four-year statute of limitations in MCL 440.2725 does not apply to those claims.

## B. ALTERNATIVE GROUND FOR AFFIRMANCE

Defendants argue, as an alternative ground for affirmance, that even without application of the economic loss doctrine, the trial court correctly granted summary disposition in favor of defendants because plaintiff "failed to establish any basis upon which Defendants would have known or had reason to know of an alleged defect." See MCL 600.2947(6). This argument was not addressed by the trial court when the court decided defendants' motion for summary disposition. Furthermore, after reviewing the record, we conclude that the arguments were not fully developed and that it would be beneficial for the trial court to address the issue of whether plaintiff "failed to establish any basis upon which Defendants would have known or had reason to know of an alleged defect." Consequently, we decline to consider the argument and reverse and remand to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michael F. Gadola
/s/ Thomas C. Cameron

-5-