*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACOB STEWART and JULIUS WHITSON JR.,

      Plaintiffs-Appellees,

v

MACOMB INTERMEDIATE SCHOOL DISTRICT,

      Defendant-Appellant,

and

AUDREY SZYMBORSKI, PROGRESSIVE
MICHIGAN INSURANCE COMPANY, and
FARMERS INSURANCE EXCHANGE,

      Defendants.

UNPUBLISHED
September 19, 2025
9:46 AM

No. 371613
Macomb Circuit Court
LC No. 2023-001838-NI

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs were in a vehicle that was rear-ended by a Macomb Intermediate School District (ISD) school bus. The trial court determined that Macomb ISD was not entitled to summary disposition. We affirm.

## I. BACKGROUND

In October 2022, plaintiff Jacob Stewart was driving to work, with plaintiff Julius Whitson Jr. riding in the front passenger seat. A school bus rear-ended plaintiffs' vehicle. Both plaintiffs went to the hospital following the crash and, in the subsequent months, engaged in various treatments, including chiropractic care and physical therapy, and they received injections. Imaging showed that Whitson had disc bulging and disc herniation. Whitson reported experiencing head, neck, and back pain, as well as impacts to his mental health. Medical providers observed Whitson to experience muscle spasms and decreased ranges of motion. Imaging showed that Stewart also had disc bulging and disc herniation. Stewart reported experiencing head, neck, and back pain.

-1-

Medical providers observed Stewart to experience symptoms that included decreased range of motion and muscle spasms.

At the time of the crash, plaintiffs were working for a landscaping company. The lower court record demonstrates that Dr. Todd Kleinstein restricted Stewart from working for one week. Stewart briefly returned to work, but stopped working in December 2022 when "it was too much on [his] back." Dr. Kleinstein issued Whitson disability certificates from October 2022 through July 2023. Stewart reported being unable to participate in the same social and recreational activities that he had before the crash, including playing sports with friends, because standing or sitting for too long caused him pain. Whitson reported being unable to attend as many family functions and activities as he had before the crash, and he had issues with prolonged standing.

Plaintiffs sued defendants in June 2023. Macomb ISD and defendant Audrey Szymborski, the bus driver, moved for summary disposition in April 2024 under MCR 2.116(C)(7) and (C)(10), arguing that plaintiffs could not demonstrate that Szymborski had been grossly negligent, so she was entitled to governmental immunity. Further, plaintiffs could not establish a serious impairment of body function under MCL 500.3135, and accordingly, the motor-vehicle exception to governmental immunity did not apply, and Macomb ISD was entitled to governmental immunity.

In response, plaintiffs argued that Szymborski had been grossly negligent and that plaintiffs had suffered serious impairments of important body functions. Plaintiffs attached depositions, various medical records, and documentation that included disability certificates for Whitson. In a September 2023 record, Dr. Ratnesh Mehra noted that Whitson had "sustained traumatic injuries to the cervical and lumbar spines during his motor vehicle accident." Similarly, Dr. Mehra stated that Stewart had "sustained traumatic injuries to the cervical and lumbar spines during a motor vehicle accident."

After defendants replied, plaintiffs filed a supplemental response brief, attaching proposed affidavits from Dr. Nabil Hodroj, arguing that the affidavits demonstrated the objective nature of plaintiffs' injuries, connected the injuries to the crash, and described plaintiffs' impairments and disabilities. Defendants objected to plaintiffs' supplemental response, noting that the affidavits were nearly identical, unnotarized, and untimely. Defendants requested that the trial court disregard the affidavits and strike them from the record.

During a hearing on the motion, the trial court stated that it had not reviewed plaintiffs' supplemental brief or defendants' objection. The trial court subsequently issued an opinion and order, granting defendants' motion as it related to Szymborski, but denying summary disposition as it related to Macomb ISD. The trial court determined that there was a genuine question of fact about whether plaintiffs suffered objective impairments that affected their abilities to lead their normal lives. The trial court referred to various exhibits, including Dr. Hodroj's affidavits, in support of plaintiffs' arguments.

Macomb ISD now appeals.

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). Summary disposition is appropriate if there is no genuine question of material fact and the moving party is entitled to judgment as a matter of law. *Id*. In reviewing a trial court's decision under MCR 2.116(C)(7), we consider the record evidence to determine whether the defendant is entitled to immunity. *Poppen v Tovey*, 256 Mich App 351, 353-354; 664 NW2d 269 (2003). We review de novo questions of statutory interpretation. *Sherman*, 332 Mich App at 632.

Macomb ISD first argues that the trial court erred by considering the proposed affidavits because they were unnotarized and untimely. Unless a trial court sets a different date, a party must file a response to a motion for summary disposition, including briefs and affidavits, at least seven days before a hearing. MCR 2.116(G)(1)(a)(*ii*). "[N]o additional or supplemental briefs may be filed without leave of the court." MCR 2.116(G)(1)(a)(*iv*). Documentary evidence, including affidavits, "shall only be considered to the extent that the content or substance would be admissible as evidence." MCR 2.116(G)(6). An affidavit filed with a court "must be verified by oath or affirmation." MCR 1.109(D)(1)(f). A trial court may not consider unsworn, unsigned affidavits when reviewing a motion for summary disposition. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 120; 839 NW2d 223 (2013).

Plaintiffs were, therefore, required to file their response to defendants' motion for summary disposition more than seven days before the hearing and were not permitted to file supplemental briefing without leave of the court, which plaintiffs did not seek or obtain. Moreover, MCR 1.109(D)(1)(f) provides that affidavits "must be verified by oath or affirmation," and Dr. Hodroj's affidavits were not notarized. Accordingly, it was error for the trial court to consider the affidavits.

Plaintiffs argue that the trial court did not rely on information from the affidavits that were not otherwise available in the record. The trial court's order clearly, however, refers to the affidavits. To the extent that the trial court relied on information solely provided in the proposed affidavits, the trial court erred, and this Court will not consider the affidavits. Similarly, we will not consider the documents that plaintiffs have submitted with their brief on appeal that were not introduced in the lower court record. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).

Regardless, plaintiffs raised a genuine question of material fact about whether they suffered serious impairments of body function. MCL 500.3135(1) provides for "tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." An impairment is a "serious impairment of body function" if:

> (a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

> (b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident. [MCL 500.3135(5).]

See also *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010).

Stewart raised a genuine question of material fact about whether he suffered an objectively manifested impairment of body function by presenting evidence that he was experiencing muscle spasms and reduced range of motion. Likewise, Whitson presented evidence of muscle spasms and reduced ranges of motion. In *McCormick*, 487 Mich at 218, our Supreme Court held that the plaintiff presented evidence of a broken ankle and symptoms that were perceivable as impairing body functions, including "ankle pain and a reduced range of motion."

Macomb ISD also argues that plaintiffs could not establish a causal relationship between the crash and the diagnostic testing results. Plaintiffs' records, however, demonstrate a question of fact about whether the disc bulges and herniations, and plaintiffs' impairments, were caused by the crash. Plaintiffs provided records from the hospital directly following the crash, at which time they complained of pain, along with their subsequent chiropractic, pain-management, and diagnostic-scan records, and there is no evidence that plaintiffs suffered from these injuries or impairments before the crash. Although "a temporal relationship, standing alone, does not demonstrate a causal connection," *West v General Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003), in this case, in the light most favorable to plaintiffs, plaintiffs raised questions of fact through their testimonies and medical records, including Dr. Mehra's notes that related plaintiffs' injuries to the crash.

Macomb ISD did not contest in the lower court or on appeal that important body functions were at-issue in this case. Accordingly, the next consideration is whether plaintiffs demonstrated a genuine question of material fact about whether the impairments affected plaintiffs' general abilities to lead their lives. This is a subjective inquiry that "requires a comparison of the plaintiff's life before and after the incident." *McCormick*, 487 Mich at 202. "[T]he statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id*.

Here, neither Stewart nor Whitson have been working, which they attribute to their injuries. Macomb ISD acknowledges on appeal that Dr. Kleinstein disabled Stewart from working for one week, and Stewart testified about Dr. Kleinstein giving him restrictions and about being unable to work due to pain. There is no temporal requirement for an impairment to affect a person's general ability to lead their life. *McCormick*, 487 Mich at 203. Plaintiffs properly presented disability certificates to the trial court regarding Whitson, who also testified about being unable to work since the crash. Despite Macomb ISD's argument on appeal, plaintiffs' restrictions were not solely self-imposed. Accordingly, there is a question of fact about whether the impairments affected plaintiffs' ability to engage in their employment.

-4-

Stewart additionally testified about the impairments affecting his ability to engage in sports and socialization. Although, as Macomb ISD argues, Stewart testified about not engaging in some of those activities for some time before the crash, his testimony overall raises a genuine question of material fact about whether the impairments affected his ability to lead his normal life. Likewise, Whitson testified that he had visited some relatives since the crash, but also that his impairments affected his ability to engage in family gatherings and other recreation. Moreover, he testified about mental health impacts from the crash. "[T]here is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *McCormick*, 487 Mich at 203. Plaintiffs, therefore, raised genuine questions of material fact.

Next, Macomb ISD argues that it was entitled to governmental immunity because plaintiffs could not establish the bodily injury requirement of MCL 691.1405. Under MCL 691.1405, a governmental agency is "liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner." Accordingly, the government waives its immunity, as to bodily injury "once a threshold of 'bodily injury' has been met." *Wesche v Mecosta Co Road Comm*, 480 Mich 75, 85-86; 746 NW2d 847 (2008). Because plaintiffs have raised questions of fact about their bodily injuries, the trial court did not err by determining that Macomb ISD was not entitled to governmental immunity.

Affirmed.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle