*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SEMCO, INC.,

        Plaintiff-Appellant,

UNPUBLISHED
April 18, 2024

v

No. 363041
Wayne Circuit Court
LC No. 20-009244-CB

GENERAL MOTORS, LLC,

        Defendant-Appellee.

Before: CAVANAGH, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and dismissing plaintiff's claims for breach of contract, unjust enrichment, and conversion. We affirm.

## I. FACTUAL BACKGROUND

Defendant, one of the "Big Three" automakers, contracted with plaintiff, a parts supplier, for many years. Through a series of written contracts, plaintiff provided plunger tips for use in defendant's manufacture of engine blocks and transmission housings. However, following a dispute over the amount owed for past deliveries, plaintiff threatened to stop producing plunger tips for defendant unless defendant agreed to pay sums allegedly due as a result of defendant's underpayment for previous deliveries. Plaintiff alleges that in March 2018, the parties orally agreed that plaintiff would continue to supply parts to defendant in exchange for defendant's promise to pay the price differential on past deliveries. However, the parties dispute the terms of this alleged oral agreement. Defendant asserts that it agreed to pay plaintiff for claimed underpayments for products delivered between 2015 and 2018, and it is undisputed that defendant paid plaintiff the disputed price differential on parts delivered between those years. Plaintiff, however, alleges that defendant also agreed to reimburse plaintiff for underpayments dating from 2009 to 2014.

Plaintiff commenced this action for breach of contract after defendant refused to make any additional payments for products previously delivered, and refused to return used plunger tips that plaintiff could recycle into new parts. Plaintiff alternatively alleged that, to the extent there was

not an enforceable contract, defendant was liable under theories of unjust enrichment and conversion for failing to return used plunger tips and refusing to pay the correct price for tips provided by plaintiff. Plaintiff alleged that it was entitled to damages in the form of lost profits, lost revenue, lost business, and other consequential damages.

During the proceedings below, defendant moved for summary disposition under MCR 2.116(C)(7) (claim barred by operation of law), (C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). Defendant argued that the alleged oral agreement was subject to the Uniform Commercial Code (UCC) statute of frauds, MCL 440.2201(3). The trial court agreed, holding that there was no genuine issue of material fact that plaintiff's contract claim was unenforceable under the statute of frauds, entitling defendant to summary disposition of that claim under MCR 2.116(C)(10). The trial court further ruled that plaintiff could not establish a claim for unjust enrichment premised on defendant's failure to pay the proper price for the plunger tips and failure to return used tips because defendant offered proof that it paid the price for each tip as specified in plaintiff's invoices, and because a blanket purchase agreement between the parties in May 2018 indicated that defendant was not required to return used tips, meaning that plaintiff waived any preexisting duty by defendant to return used tips. Further, plaintiff's representative, Justin Cornely, admitted that defendant only made one promise to return the tips, which occurred in 2019, and that promise was limited to tips sold at that time. Finally, the court dismissed plaintiff's conversion claim because it agreed with defendant that the plunger tips were made available to defendant only under the parties' contractual relationship, and plaintiff failed to identify a legal duty by defendant to return the tips outside of that contractual relationship.

Plaintiff moved for reconsideration of the trial court's decision, but the motion was denied, as the trial court ruled that it was not convinced that a palpable error was made in its original ruling. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10). A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). When reviewing a motion under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. Summary disposition is appropriate when, viewing the evidence submitted by the parties in the light most favorable to the nonmovant, "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *Id*.

### B. BREACH OF CONTRACT

Plaintiff argues that the trial court erred by holding that its claim for breach of the alleged March 2018 oral agreement was barred by the statute of frauds. We disagree.

A party claiming breach of contract must prove by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the claimant. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). The trial court ruled that the alleged March 2018 oral agreement was subject to the UCC statute of frauds in MCL 440.2201(1), which provides:

> Except as otherwise provided in this section, a contract for the sale of goods for the price of $1,000.00 or more is not enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in the writing.

Plaintiff does not dispute that the March 2018 oral agreement falls within the scope of MCL 440.2201(1). At issue is whether plaintiff can establish an exception to the writing requirement of the statute. The writing requirement, set forth in MCL 440.2201(3), provides as follows:

> A contract that does not satisfy the requirements of subsection (1) but is valid in other respects is enforceable in any of the following circumstances:
>
> (a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances that reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement.
>
> (b) If the party against whom enforcement is sought admits in his or her pleading or testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this section beyond the quantity of goods admitted.
>
> (c) With respect to goods for which payment has been made and accepted or that have been received and accepted under section [MCL 440.2606].

Plaintiff argues that the trial court erred as a matter of law by holding that the exception for specifically manufactured goods was not applicable because it applies only to goods that "*are to be* specifically manufactured" at a future date, not goods that have already been manufactured. MCL 440.2201(3)(a) (emphasis added).

We agree with the trial court that MCL 440.2201(3)(a) is intended to protect a seller who relies on an oral agreement to manufacture goods for a specific buyer from being left with goods that cannot be sold to anyone else. The exception in MCL 440.2201(3)(a) expressly applies to goods that will be "specially manufactured for the buyer" in the future, but the alleged March 2018 oral agreement did not involve such goods. Instead, plaintiff sought to recover alleged underpayments it claimed were owed by defendant for goods purchased from 2009 to 2014. The

-3-

trial court's interpretation of MCL 440.2201(3)(a) is supported by 9 Williston, Contracts (4th ed), § 26:19, which states:

> Under the Code, therefore, goods that are to be specially manufactured by the seller or a third person especially for the buyer are within the statute and thus require a writing unless they are not suitable for sale to others in the ordinary course of the seller's business, and the seller has substantially begun to manufacture the goods, or to procure them from a third party, before it learned of the buyer's intention not to take them. Furthermore, the circumstances must reasonably indicate that the goods to be specially manufactured were for the buyer. *The purpose of the specially manufactured goods exception is to ensure that the seller, having relied on the oral contract and partly performed it, should not be saddled with goods that cannot be resold on the basis of a technical statute of frauds defense.* The exception, in effect, codifies a special part performance, estoppel rule in this limited instance. As one court has noted: "The Statute exempts contracts involving 'specially manufactured' goods from the writing requirement because in these cases the very nature of the goods serves as a reliable indication that a contract was indeed formed. Where the seller has commenced or completed the manufacture of goods that conform to the special needs of a particular buyer, and thereby are not suitable for sale to others, not only is the likelihood of a perjured claim of a contract diminished, but denying enforcement to such a contract would impose substantial hardship on the aggrieved party (*i.e.*, a seller is left with goods that are difficult or impossible to sell to others; a buyer may have difficulty locating an alternative supply of the goods). The unfairness is especially acute where, as in the present case, the seller has incurred substantial, unrecoverable expense in reliance on the oral promise of the buyer. The term 'specially manufactured,' therefore, refers to the nature of the particular goods in question and not to whether the goods were made in an unusual, as opposed to the regular, business operation or manufacturing process of the seller. That the seller may be in the business of manufacturing custom designed and made goods does not necessarily preclude his goods from being deemed 'specially manufactured' within the meaning of this exception. The crucial inquiry is whether the manufacturer could sell the goods in the ordinary course of his business to someone other than the original buyer. If with slight alterations the goods could be so sold, then they are not specially manufactured; if, however, essential changes are necessary to render the goods marketable by the seller to others, then the exception does apply."
>
> It is part of the plaintiff-seller's case to establish all of the requirements of this exception if the statute has not been otherwise satisfied. Whether the exception applies is a question of law, but whether goods were specially manufactured or are suitable for sale to others in ordinary course are questions of fact. [Footnotes and citations omitted; italics supplied. See also *Impossible Electronic Techniques, Inc v Wackenhut Protective Sys, Inc*, 669 F2d 1026, 1036-1037 (CA 5, 1982); *Webcor Packaging Corp v Autozone, Inc*, 158 F3d 354, 356 (CA 6, 1998).]

The alleged March 2018 oral agreement was not a contract for the sale of specifically manufactured goods, but instead involved an agreement regarding the price to pay for goods

previously manufactured and delivered from 2009 to 2014. Plaintiff could not have produced the goods at issue in reliance on the 2018 oral agreement because the goods were manufactured and delivered well before that alleged agreement. Moreover, plaintiff does not dispute that defendant paid the invoice price for those previously delivered goods. This case does not involve a situation where plaintiff may be stuck with specifically manufactured goods that defendant refuses to accept. Unlike a situation where goods are specifically manufactured for a buyer *after* an alleged oral agreement, which is a reliable indication that a contract was indeed formed, there are no circumstances here that serve as a reliable indicator that the parties formed an agreement in 2018 to pay a specific price for products previously delivered between 2009 and 2014. Accordingly, the trial court did not err by ruling that the exemption for specifically manufactured goods in MCL 440.2201(3)(a) does not apply to the oral agreement in this case.

Plaintiff also argues that it should be permitted to rely on the exception for partial performance in MCL 440.2201(3)(c).[1] MCL 440.2201(3)(c) recognizes that an oral agreement may become enforceable through performance. *Power Press Sales Co v MSI Battle Creek Stamping*, 238 Mich App 173, 178-179; 604 NW2d 772 (1999). Partial performance acts as a substitute for a written contract only for the goods which have been accepted, or for which payment has been made and accepted. *Auburn Sales, Inc v Cypros Trading & Shipping, Inc*, 898 F3d 710, 718 n 6 (CA 6, 2018). The parties agree that defendant made additional payments for parts received between 2015 and 2018. While those additional payments qualify as partial performance of an alleged oral agreement to pay the disputed price differential for goods delivered between 2015 and 2018, they do not serve as an acknowledgment that defendant agreed to make any additional payments for parts previously delivered from 2009 to 2014. Further, they do not demonstrate that defendant agreed to pay a price differential for any alleged underpayments for goods delivered between 2009 and 2014.

We note that MCL 440.2201(3) provides exceptions to the writing requirement for contracts that are otherwise valid, but MCL 440.2201 is not an aid for proving the terms of the contract. See *Lorenz Supply Co v American Standard, Inc*, 419 Mich 610, 615-616; 358 NW2d 845 (1984). MCL 440.2204, which identifies the minimum requirements for an enforceable agreement outside the statute of frauds, provides:

> (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

---

[1] Although plaintiff briefly mentioned this exception at the hearing on defendant's motion for summary disposition, plaintiff did not raise this argument in its response to defendant's motion and the trial court did not address it. Thus, the issue could be considered waived. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-5. However, since the issue involves a question of law for which the necessary facts have been presented, we will address it. *Id*. at ___; slip op at 3.

(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

In contrast, the UCC statute of frauds does not require a formal written contract, but requires that there be adequate written documentary evidence of its existence and essential terms. *Cloud Corp v Hasbro, Inc*, 314 F3d 289, 295 (CA 7, 2002). One of the essential terms necessary for an agreement to avoid the statute of frauds is that the quantity of goods be established in writing. MCL 440.2201(1). In this case, there is no writing establishing the quantity of goods for which defendant allegedly agreed to make additional payments. Instead, plaintiff relies only on Cornely's recollection of the terms of the oral agreement as stated in his affidavit.

In sum, to the extent that plaintiff relies on defendant's partial performance to avoid application of the statute of frauds, that reliance is effective only for defendant's additional payments for parts delivered from 2015 to 2018. Plaintiff has not provided evidence that defendant performed any part of an alleged oral agreement to pay additional sums for all parts delivered from 2009 to 2014. While plaintiff believes that the additional payments made by defendant for parts delivered from 2015 to 2018 qualify as partial performance, the dispute in this case concerns parts delivered between 2009 and 2014. Defendant denies agreeing to pay additional sums for those parts, and there is no evidence of any partial performance by defendant of any such agreement. Any performance by defendant to pay additional sums for parts delivered from 2015 to 2018 does not logically prove the existence of the contract for which plaintiff seeks enforcement. For these reasons, plaintiff has not demonstrated that the trial court erred by dismissing its claim for breach of contract.

## C.  UNJUST ENRICHMENT

Plaintiff next argues that the trial court erred by dismissing its claim for unjust enrichment under MCR 2.116(C)(10). We disagree.

Unjust enrichment is the equitable counterpart to breach of contract. See *AFT Mich v Michigan*, 303 Mich App 651, 677; 846 NW2d 583 (2014), aff'd 497 Mich 197 (2015). "An equitable claim of unjust enrichment is grounded on the theory that the law will imply a contract to prevent the unjust enrichment of another party." *Landstar Express America, Inc v Nexteer Auto Corp*, 319 Mich App 192, 204; 900 NW2d 650 (2017). But if there is an express contract between the parties covering the subject matter, the doctrine of unjust enrichment does not apply. *Id*. A plaintiff claiming unjust enrichment must show "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Id.* at 205.

On appeal, plaintiff only challenges the trial court's ruling as it applies to defendant's failure to return used plunger tips. The evidence established that the parties entered into a written contract in May 2018 for the manufacture of parts, after operating without a written agreement for a period of time. The agreement did not address any obligation to return used plunger tips to

plaintiff.  The parties first addressed the return of used plunger tips in another contract in 2019. Otherwise, the evidence was undisputed that defendant was not obligated to return used tips.  To the extent that it returned any plunger tips beforehand, it did so voluntarily.  Because the parties negotiated this requirement in its 2019 contract, but omitted it from other contracts, plaintiff cannot establish an inequity resulting from the failure to return used plunger tips delivered pursuant to its earlier contracts with defendant.

More significantly, there is no basis for finding that defendant's failure to return used plunger tips resulted in a benefit to defendant.  "[T]he law will imply a contract to prevent unjust enrichment only if the defendant has been *unjustly or inequitably enriched* at the plaintiff's expense."  *Landstar Express*, 319 Mich App at 205 (emphasis added).  While plaintiff has explained how the used tips could be reused in its manufacturing process, there is no evidence of any benefit to defendant from its failure to return the used tips.  Accordingly, plaintiff cannot establish that defendant's retention of the used tips constituted unjust enrichment.  Therefore, plaintiff's unjust-enrichment claim must fail.

## D.  CONVERSION

Finally, plaintiff argues that the trial court erred by dismissing its claim for conversion under MCR 2.116(C)(10).  We again disagree.

"Conversion, both at common law and under the statute, is defined as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' "  *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 447; 844 NW2d 727 (2013), aff'd 497 Mich 337 (2015).  Conversion, whether statutory or common-law, sounds in tort.  *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346-362; 871 NW2d 136 (2015).  Under the economic loss doctrine, where a contractual agreement exists, a tort claim cannot be maintained unless it is based on a duty that arises separate and distinct from any contractual obligation.  See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 50-52; 649 NW2d 783 (2002).

As the trial court observed, any obligation that defendant had to return used plunger tips existed solely pursuant to its contractual relationship with plaintiff.  Plaintiff has not identified any legal duty by defendant, independent of this contractual relationship, to return used plunger tips to plaintiff.  Although plaintiff relies on the parties' course of dealing and past performance in support of this claim, a course of dealing and past performance is only relevant to demonstrate the scope of the parties' contractual obligations.  See *State Bank of Standish v Curry*, 442 Mich 76, 86; 500 NW2d 104 (1993), and *H J Tucker & Assoc v Allied Chucker & Engineering Co*, 234 Mich App 550, 567; 595 NW2d 176 (1999).  Accordingly, the trial court did not err by dismissing plaintiff's claim for conversion.

## III.  CONCLUSION

Plaintiff has failed to show that the trial court erred by granting summary disposition in favor of defendant under MCR 2.116(C)(10).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick